940 F.2d 651
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CEDAR BLUFF BROADCASTING, INCORPORATED, Plaintiff-Appellant,
v.
Acie RASNAKE, Richlands National Bank, Defendants-Appellees.
 No. 90-1554.
 United States Court of Appeals, Fourth Circuit.
 Argued April 8, 1991.
Decided Aug. 1, 1991.
 
 Appeal from the United States District Court for the Western District of Virginia, at Abingdon. Samuel G. Wilson, District Judge. (CA-90-162-A, BK-90-839)
 John Michel Lamie, Browning, Morefield, Lamie & Sharp, P.C., Abingdon, Va., for appellant.
 Robert Edward Wick, Jr., Bristol, Va. (argued), for appellees; Stephen M. Hodges, Penn, Stuart, Eskridge & Jones, Abingdon, Va., on brief.
 W.D.Va.
 AFFIRMED.
 Before K.K. HALL, Circuit Judge, CHAPMAN, Senior Circuit Judge, and JOHN C. GODBOLD, Senior United States Circuit Judge for the Eleventh Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Cedar Bluff Broadcasting, Inc. ("Cedar-Bluff"), appeals the district court's order affirming the bankruptcy court's decision to convert its case from Chapter 11 to Chapter 7.
 
 I.
 
 2
 Cedar Bluff, the owner of an AM/FM radio station, filed a Chapter 11 bankruptcy petition on May 2, 1990. Several creditors of two impaired classes objected to the debtor's proposed plan of reorganization, arguing that the plan was not feasible and violated the absolute priority rule. The confirmation hearing on the plan was scheduled for November 13, 1990.
 
 
 3
 Acie Rasnake, a creditor of the debtor corporation, filed a motion to convert Cedar Bluff's case from Chapter 11 to Chapter 7. Rasnake concedes in his brief that he was responsible for giving notices of the motion and the hearing, but that notices were only sent to Cedar Bluff and the United States trustee. The hearing date was continued until November 13, 1990, the same date as the confirmation hearing.
 
 
 4
 At the conversion/confirmation hearing, Cedar Bluff moved the court to appoint an examiner to report on alleged mismanagement of the station. During arguments on the motion, Dickenson-Buchanan Bank, one of the creditors, tended to favor the appointment of an examiner. Rasnake and Richlands National Bank, another creditor, objected to the appointment of the examiner.
 
 
 5
 John Fletcher, the president of Cedar Bluff, testified that the biggest problem with the station had, in fact, been poor management. However, since Cedar Bluff filed its petition in Chapter 11 bankruptcy, Fletcher had hired a new manager, who had improved the station by billing over $10,000 for the month of October and by arranging to run commercial time on Cedar Bluff's recently licensed FM station. Fletcher also testified that the station was able to make the payments set out in the proposed plan of reorganization.
 
 
 6
 However, in response to specific questions on direct examination, Fletcher admitted that he did not know what the station's monthly expenses were or how much air time on the FM station could be sold to commercial advertisers. He expressly deferred to Cedar Bluff's manager and the bookkeeper for answers to these questions. Fletcher further testified that the corporation had made adequate-protection payments to Richlands National Bank in the amount of $1,000 per month in August, September, and October, as ordered by the court. Although the September payment resulted in a returned check, Fletcher had since paid it.
 
 
 7
 Fletcher was cross-examined first by counsel for Richlands National Bank. When Rasnake began his cross-examination, however, the bankruptcy judge announced that he had heard enough, and that he was converting the case to a Chapter 7 proceeding. The debtor objected and asked the court to hear the other witnesses that it had planned to call. The court refused, but allowed the debtor to proffer the substance of the witnesses' testimony.
 
 
 8
 The debtor proffered that the station manager would have testified to an increase in sales and advertising. In addition, the bookkeeper would have testified that she had prepared a budget and the station had adequate income to fund the proposed plan. The debtor argued that this evidence supported the proposed plan and was sufficient to defeat the motion to convert the case to a Chapter 7 proceeding. The court ruled from the bench, however, that even with the proffered evidence, the evidence did not support the possibility that this plan could be confirmed or accepted by a sufficient number of creditors in the impaired classes. 11 U.S.C.A. Sec. 1129 (West Supp.1991).
 
 
 9
 In its Memorandum Opinion, the bankruptcy court placed great importance on its conclusion that Fletcher, the chief executive officer, president, and 50% shareholder of Cedar Bluff, lacked knowledge and understanding of the station's business. Therefore, the court held that "[s]ince a lack of supervision exists and since the Plan has not been accepted in proper compliance with the statute and violates the absolute priority rule, ... the appointment of an examiner ... would not be in the best interest of creditors or the debtor and the Motion to convert to Chapter 7 ... should be granted."* Memorandum Opinion at 3. Thus, the court denied the motion to appoint an examiner and granted Rasnake's motion to convert the case to Chapter 7. The court's order included a provision "that the Chapter 7 trustee should operate the radio stations pursuant to 11 U.S.C. Sec. 721 until such time as a sale or liquidation [was] possible...." Memorandum Opinion at 3.
 
 
 10
 Debtor appealed to the district court, raising the same issues it raised in this appeal. The court affirmed, holding that all parties had adequate notice that confirmation was in jeopardy, and that based on the bankruptcy court's knowledge of the case and the evidence presented in the hearing, the lack of notice under Bankruptcy Rule 2002 was harmless, if error at all. In addition, the court found that the bankruptcy court's findings of fact concerning the unsound and uncertain state of the station were not clearly erroneous. This appeal followed.
 
 II.
 
 11
 Cedar Bluff argues that the bankruptcy court erred by converting this case from Chapter 11 to Chapter 7 without notice to all creditors of the hearing on the motion to convert. Cedar Bluff bases its argument on 11 U.S.C. Sec. 1112, Bankruptcy Rule 2002(a)(5), and local rule IX, each of which requires that notice of a hearing on conversion be given to all creditors. In addition, Cedar Bluff argues that due process requires that notice be given to each creditor before rights may potentially be affected. In this case, notice of the hearing was sent to the debtor and to the U.S. Trustee, but not to the other creditors; however, notice of the November 13 confirmation hearing was sent to all parties in interest.
 
 
 12
 Cedar Bluff's argument is procedurally barred on appeal because it failed to raise this issue before the bankruptcy court. Fed.R.Civ.P. 46; City of Richmond, Va. v. Madison Management Group, Inc., 918 F.2d 438, 453-54 (4th Cir.1990). However, even if appellant's argument were not procedurally barred, it lacks merit. Though Cedar Bluff points out a violation in the notice rules, it fails to state that it was prejudiced by the lack of notice to general creditors, how the presence of other creditors would have helped it avoid conversion, or what evidence the general creditors could have presented to oppose the motion to convert that it could not have presented. Cedar Bluff does not even assert that any creditors who did not receive notice opposed the motion to convert. Indeed, no creditors appealed or intervened to reverse the bankruptcy court's order converting this case to Chapter 7.
 
 III.
 
 13
 Cedar Bluff contends also that the bankruptcy court erred in refusing to hear all its evidence before deciding to grant the motion to convert to Chapter 7. It argues also that the court's error is one of law, based on the court's statement that it did not have to hear any further evidence because the corporation could "rise no higher" than the evidence given by its chief executive officer. We disagree with the assertion that the court's statement raises a question of law.
 
 
 14
 The court's admission or refusal to admit evidence is normally reviewed under an abuse of discretion standard. Garraghty v. Jordan, 830 F.2d 1295, 1298 (4th Cir.1987). Earlier proceedings and testimony presented at the confirmation hearing established that management incompetence had been the radio station's biggest obstacle to success. As chief executive officer, Fletcher was responsible for management of the station. He was responsible for the success or failure of the business and for hiring and managing its staff. Fletcher's testimony made it apparent to the court that his competency and management skills had not significantly improved since the filing of the bankruptcy petition six months earlier. Though Fletcher was the active owner and chief executive officer, he still remained uninformed about key aspects of the business, such as the station's monthly expenses and the potential for commercial sales by the FM station. The evidence supported the court's conclusion that management lacked knowledge and understanding of the debtor's business, and, therefore, considered with the other factors cited by the court, its conclusion that the best interests of creditors required conversion was not clearly erroneous.
 
 
 15
 Furthermore, the record reveals that the bankruptcy court considered the proffered evidence when deciding that the debtor's proposed plan was unconfirmable. Based on our review of the proffered evidence, we find no abuse of discretion in the court's refusal to hear the complete testimony of the manager and the bookkeeper because it did not relate to the effectiveness of the chief executive officer and, thus, would not have altered the basis of the court's decision concerning the confirmability of the proposed plan. Garraghty, 830 F.2d at 1298. The evidence would only have detailed what Fletcher had already testified to.
 
 
 16
 AFFIRMED.
 
 
 
 *
 The bankruptcy court held that the plan violated the absolute priority rule, because it granted the shareholders the right to repurchase interests in the debtor corporation, thereby retaining control, while general unsecured creditors would receive only 25% on their claims