**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0283n.06**
**Filed: April 27, 2006**

**Nos. 04-2020, 04-2524**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re KENNETH M. MITAN, | ) | |
| | ) | |
| Debtor, | ) | |
| ------------------------------------- | ) | |
| | ) | |
| FRANK J. MITAN, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiff-Appellant, | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| v. | ) | |
| | ) | |
| LEONARD DUVAL, HEINZ RODE, | ) | |
| FRANDORSON PROPERTIES, JEROME F. | ) | |
| CORR, UNITED STATES TRUSTEE and | ) | |
| KENNETH M. MITAN, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: KENNEDY, MOORE and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Kenneth Mitan filed a voluntary petition for Chapter 11 bankruptcy, listing his father, Frank Mitan, as a secured creditor and approximately 100 other individuals and businesses as unsecured creditors. The bankruptcy court dismissed the petition after the debtor failed to attend a scheduled meeting of creditors and failed to attend a hearing on the court's order to show cause why the case should not be dismissed or converted to Chapter 7. After the bankruptcy court dismissed the case, four unsecured creditors petitioned the bankruptcy court

to reconsider the dismissal entry and reinstate the bankruptcy. In doing so, they did not notify Frank Mitan of their request. The court held a hearing on the motion, after which it vacated the dismissal of the bankruptcy case and sua sponte converted the case to a Chapter 7 liquidation.

Claiming that he had not received notice of the hearing, Frank Mitan appealed. The district court rejected the appeal and, in the process, sanctioned Mitan's attorney (and son), Keith Mitan, for filing it. Because the bankruptcy court erred in converting the case to a Chapter 7 liquidation without giving Frank Mitan notice, we reverse its decision, and because Mitan's attorney necessarily had a legitimate basis for filing the appeal, we reverse the district court's sanctions decision.

I.

Kenneth Mitan filed a petition for Chapter 11 bankruptcy in the Central District of California on May 19, 2003. Schedule D of the petition listed his father, Frank Mitan, as a creditor with a claim in the amount of $550,000. Schedule F listed roughly 100 unsecured creditors, including Leonard Duval, Heinz Rode, Frandorson Properties and Jerome F. Corr, the four appellees in this case whom we shall refer to as the four unsecured creditors.

On June 6, 2003, the four unsecured creditors sought to dismiss Kenneth Mitan's bankruptcy petition or in the alternative to transfer it to the Eastern District of Michigan. On July 30, 2003, the California bankruptcy court transferred the case to the Eastern District of Michigan. That same day, Kenneth Mitan sought permission from the California bankruptcy court to dismiss his bankruptcy

petition.  He also asked the court to reconsider its transfer-of-venue order.  On October 8, 2003, the California bankruptcy court denied both requests.

After the transfer, the United States Bankruptcy Court for the Eastern District of Michigan held a status conference, though no one appeared at the conference.  Five days later, the court ordered "the debtor and debtor's counsel [to] appear on Monday, January 12, 2004 . . . [to] show cause why th[e] Chapter 11 case should not be dismissed or converted" to Chapter 7.  JA 50.  The show-cause order was sent to all creditors, including Frank Mitan.

On January 12, 2004, when neither the debtor nor any of his creditors (including Frank Mitan) appeared at the show-cause hearing, the court dismissed the bankruptcy case due to "the debtor's abandonment of it."  JA 54.  The next day, the four unsecured creditors filed a motion for reconsideration, asking the court to reconsider its decision and "reinstate [the] case for further proceedings on the dismissal or conversion of the case to Chapter 7."  JA 59.  The four unsecured creditors notified the U.S. Trustee and Kenneth Mitan of their motion but did not notify any of the other creditors, including Frank Mitan.

On January 20, 2004, the bankruptcy court issued a notice of hearing on the reconsideration motion by the four unsecured creditors, though it did not send this notice to Frank Mitan.  On February 9, 2004, during the hearing on this motion, the four unsecured creditors argued that the debtor was "play[ing] a game with his creditors," a game of "catch me if you can."  JA 68.  They

also alleged that Kenneth Mitan "places himself in a position where the litigation involving his creditors usually involves state law claims that bring creditors all over the country trying to chase him around." JA 69. Finally, they said:

> [It is] in the distinct interests of the creditors . . . to place [Kenneth Mitan] . . . where all of his creditors can come and assert their claims against him, where he will be forced to appear and defend himself rather than suing in different courts, playing the game that he usually does play, which is basically not appearing. . . . [T]he way to take away the advantage that this debtor enjoys over his creditors is to force him to see it through. He filed a Chapter 11 bankruptcy. He represented to the Court out there [in California] that he had the assets to fund a Chapter 11. When things started looking bad for him, he tried to take a voluntary dismissal on the case claiming that he didn't a month later have the funds to carry through a Chapter 11.

JA 69–70. At the hearing, no one argued that Frank Mitan, a creditor and the father of the debtor, was not a genuine creditor.

At the conclusion of the hearing, the court vacated its earlier dismissal of the bankruptcy case and sua sponte converted the case to a Chapter 7 liquidation proceeding. The court issued separate orders for the dismissal and conversion, after which it notified Frank Mitan and the other creditors that the case had been reinstated and converted to Chapter 7.

Frank Mitan appealed, asking the district court to reverse the bankruptcy court's reinstatement and conversion orders. On May 21, 2004, two of the four unsecured creditors, Frandorson Properties and Jerome Corr, filed a response to the appeal, arguing among other things that it warranted Rule 11 sanctions. After hearing oral argument, the district court affirmed the bankruptcy court's rulings, denied Frank Mitan's appeal and imposed sanctions against his attorney

(and son), Keith Mitan, for filing a frivolous appeal. Frank Mitan appealed, challenging the bankruptcy court's conversion decision and the district court's sanctions decision.

## II.

In a bankruptcy appeal, we generally "review[] a bankruptcy court's decision directly, not the district court's review of the bankruptcy decision." *In re AMC Mortgage Co., Inc.*, 213 F.3d 917, 920 (6th Cir. 2000). And in doing so, the bankruptcy court's findings of fact receive clear-error review and its legal conclusions receive de novo review. *In re Gibson Group, Inc.*, 66 F.3d 1436, 1440 (6th Cir. 1995). We apply abuse-of-discretion review to the district court's sanctions decision. *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987).

## A.

Before considering the merits, we address the four unsecured creditors' argument that Frank Mitan lacks standing to bring this appeal. "[T]o have standing to appeal a bankruptcy court order, an appellant must have been directly and adversely affected pecuniarily by the order." *In re Troutman Enter., Inc.*, 286 F.3d 359, 364 (6th Cir. 2002) (internal quotation marks omitted). Parties may appeal a bankruptcy court order in other words only "when it diminishes their property, increases their burdens or impairs their rights." *Id.*

Frank Mitan has satisfied this test. In reinstating the bankruptcy case, the bankruptcy court also reinstated the automatic stay, *In re Searcy*, 313 B.R. 439, 443 (Bankr. W.D. Ark. 2004), which

necessarily limited Frank Mitan's rights to use or seize property in which he holds a security interest and which the debtor currently controls. The conversion of the case from Chapter 11 to Chapter 7 likewise affected Frank Mitan's property interests because he has substantial unsecured debts that ultimately may not be recovered (or recoverable) in a Chapter 7 liquidation. *See Cedar Bluff Broadcasting, Inc. v. Rasnake*, No. 90-1554, 1991 WL 141035, at *2 (4th Cir. Aug. 1, 1991) (noting that creditors may appeal the conversion of a case from Chapter 11 to Chapter 7); *cf.* 11 U.S.C. § 1112(b) (noting that a creditor has standing to request conversion from Chapter 11 to Chapter 7); *Matter of Welwood Corp.*, 60 B.R. 319 (Bankr. M.D. Fla. 1986) (noting that a creditor has standing to request conversion or dismissal).

Attempting to sidestep this conclusion, the four unsecured creditors argue that Frank Mitan "never filed any proof of claim with the Bankruptcy Court," that "there is no evidence that he has any interest whatsoever in the outcome of the Debtor's Bankruptcy Case other than as a shill" and that he merely "pretends to be a 'secured creditor' of his son [Kenneth Mitan]." Appellees Br. at 24–25. Neither the bankruptcy court nor the district court, however, found that Frank Mitan was not a genuine creditor or that he was otherwise acting as his son's "shill"—nor indeed does it appear that this argument was raised before the bankruptcy court. That Frank Mitan never filed a proof of claim also does not affect his standing to file this appeal. In a Chapter 11 bankruptcy, "[a] proof of claim or interest is deemed filed . . . for any claim or interest that appears in the schedules filed" in connection with a bankruptcy petition, "except [for] a claim or interest that is scheduled as disputed, contingent, or unliquidated." 11 U.S.C. § 1111(a). The debtor identified Frank Mitan's interest in

the bankruptcy in the schedules affixed to his petition, and no one claims that his interest was

characterized as disputed, contingent or unliquidated.  JA 20.  As an affected creditor, Frank Mitan

has standing to appeal the reinstatement and conversion orders.

B.

Turning to the merits, Frank Mitan argues that the bankruptcy court violated Rule 2002(a)

of the Federal Rules of Bankruptcy Procedure by reinstating the bankruptcy case and converting it

to a Chapter 7 liquidation without giving him notice and an opportunity to be heard.  We agree.

The Bankruptcy Code generally requires a court to give affected parties notice and an

opportunity to be heard before converting or dismissing a Chapter 11 petition.  "[O]n request of a

party in interest or the United States trustee or bankruptcy administrator," it says,

> *and after notice and a hearing*, the court may convert a case under this chapter to a case
> under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best
> interest of creditors and the estate, for cause.

11 U.S.C. § 1112(b) (1994) (emphasis added).  The Code further provides that "'after notice and a

hearing'" means "after such notice as is appropriate in the particular circumstances, and such

opportunity for a hearing as is appropriate in the particular circumstances."  *Id.* § 102(1)(A).

Consistent with these provisions, Rule 2002(a) of the Federal Rules of Bankruptcy Procedure says:

> Twenty-day notices to parties in interest.
>
> Except as provided in [certain situations not applicable here], the clerk, or some other person as the court may direct, *shall give* the debtor, the trustee, *all creditors* and indenture trustees at least 20 days' notice by mail of:
>
> . . . .
>
> (4) in a . . . chapter 11 reorganization case, . . . the *hearing on the dismissal of the case or the conversion of the case to another chapter*.

Fed. R. Bankr. P. 2002(a) (emphasis added).

By their terms, these provisions gave Frank Mitan a right to notice (and a hearing) that he never received. The statutory provisions presume that notice and a hearing will precede a conversion or dismissal decision. And Rule 2002(a) explicitly requires "the clerk, or some other person" affiliated with the court to give the affected entity (here Frank Mitan) "20 days' notice of the hearing." Not only did the court not give such notice before converting the case but it also gave no explanation why notice somehow was not appropriate in this case. *Cf.* 9 Collier on Bankruptcy ¶ 2002.02[6][d] (15th ed. rev.2006) ("[I]n *appropriate circumstances*, the court may act *sua sponte*, without notice or hearing, and dismiss or convert the case when . . . the case is irremediably defective.") (emphasis added and internal quotation marks omitted).

The four unsecured creditors counter that Frank Mitan was not entitled to notice of the conversion because they properly served their motion for reconsideration to vacate the dismissal

order under Local Rules 9024-1 and 9014-1 and Bankruptcy Rule 9013. Those rules, they point out, did not require them "to notify *anybody* other than the trustee or debtor-in-possession . . . unless the Bankruptcy Court so directed, which it did not." Appellees Br. at 20. But these rules govern motion practices generally and motions to reconsider more specifically. They do not repeal Bankruptcy Rule 2002(a), which specifically governs who is entitled to receive notice of a proposed conversion of a case, an issue that the four unsecured creditors did not raise or identify (beyond requesting that a date be set for a separate hearing on the matter) in their reconsideration motion and a topic that the bankruptcy court raised on its own after hearing arguments on the reconsideration motion.

A comparison of the relevant rules bolsters the point. On the one hand, Bankruptcy Rule 2002(a) specifically identifies several milestones or potential events in a bankruptcy proceeding and requires notice to accompany each of them. *See* Fed. R. Bankr. P. 2002(a) (requiring notice to "the debtor, the trustee, all creditors and indenture trustees" for (1) "the meeting of creditors," (2) the "proposed use, sale, or lease of property of the estate other than in the ordinary course of business," (3) "the hearing on approval of a compromise or settlement of a controversy," (4) "the hearing on the dismissal of the case or the conversion of the case to another chapter," (5) "the time fixed to accept or reject a proposed modification of a plan," (6) "a hearing on any entity's request for compensation or reimbursement of expenses," (7) "the time fixed for filing proofs of claims" and (8) "the time fixed for filing objections and the hearing to consider confirmation of a chapter 12 plan").

On the other hand, Local Rule 9024-1 of the Bankruptcy Rules of the Eastern District of Michigan governs motions to alter or amend orders or judgments and states that "[n]o response to the motion and no oral argument thereon shall be allowed unless the Court, after filing of the motion, otherwise directs." Bankr. E.D. Mich. R. 9024-1(b). That no oral argument is needed and no response is required with respect to a run-of-the-mine reconsideration motion does not mean that the bankruptcy court has authority to dispense with the notice and hearing requirements established by Bankruptcy Rule 2002(a) when it chooses to raise the possibility of conversion sua sponte in the context of resolving a reconsideration motion. The same is true with respect to the general requirements of Bankruptcy Rule 9013, upon which the four unsecured creditors also rely; the rule simply does not apply here. *See* Fed. R. Bankr. P. 9013 (excepting motions "which may be considered ex parte" from the requirement that they be served on "those entities specified by these rules"). And the same is true with respect to the four unsecured creditors' reliance upon Local Rule 9014-1, which deals with "[m]otion [p]rocedure [g]enerally" and which says that it "does not apply to . . . a motion for reconsideration." Bankr. E.D. Mich. R. 9014-1(f)(2).

In the end, the four unsecured creditors have failed to explain why, consistent with Bankruptcy Rule 2002(a), "*the clerk*, or *some other person* as the court may direct" was not required to give "all creditors . . . at least 20 days' notice by mail" of the impending hearing in which the substantive issue of conversion was to be addressed and was ultimately resolved. Fed. R. Bankr. P. 2002(a) (emphasis added); *see also* 4 Norton Bankruptcy Law and Practice § 75:8(E) (2d ed. 2006) ("Pursuant to Bankruptcy Rule 1017[], conversion proceedings fall within either Rule 9013

- 10 -

or 9014, depending upon whether the motion has been voluntarily precipitated by the debtor, or has

been initiated by a party in interest or by the United States trustee to require involuntary conversion.

*Motions to convert are also subject to the notice requirements of Bankruptcy Rule 2002(a).*")

(emphasis added); 9 Collier on Bankruptcy ¶ 1017.05[1][a] ("When conversion or dismissal is not

a matter of right, Rule 1017(f) requires a hearing as a contested matter under Rule 9014. . . . In such

cases, *Rule 2002(a)(4) requires 20 days' notice to* the debtor, *all creditors*, the trustee and indenture

trustees unless [the motion is made in circumstances not applicable here].") (emphasis added).

The four unsecured creditors next argue that Frank Mitan waived his right to notice because

he did not appear at an earlier creditors' meeting. In support of this argument, they point to Local

Rule 2003-1, which says in pertinent part:

> (a) If a debtor fails to appear at a meeting of creditors, notice to creditors of the trustee's intent to file a motion to dismiss the case may be provided by an announcement at the meeting of creditors.
>
> . . . .
>
> (c) If the debtor fails to timely respond and no creditor timely objects or requests a hearing, the trustee may file a certification of non-response. The Court may deem the debtor's non-response to the motion and the creditors' failure to object or to affirmatively seek a hearing to be a *waiver of the opportunity for a hearing on the motion to dismiss*. The Court may thereafter enter an order dismissing the case without a hearing.

*Id.* (emphasis added). By its terms, the rule says that a creditor's failure to object to a motion to

dismiss may waive an opportunity for a hearing on the dismissal; the rule does not authorize the

court to conduct an ex parte (and sua sponte) hearing on conversion without informing the creditor of that hearing.

Nor do the four unsecured creditors explain why ignoring Rule 2002 makes sense in this instance. They agree with Frank Mitan that Rule 2002(a) would have entitled him to notice if the conversion had occurred in an original proceeding. Yet they never explain why the letter and spirit of the Rule do not equally compel notice when the conversion order arises from a seemingly unrelated reconsideration motion in which the court suddenly raises the possibility of conversion on its own. The court did not address conversion in its order of dismissal; the four unsecured creditors did not request conversion in their reconsideration motion; and the conversion ruling seems to have been the first time in the case that the court or any of the parties in interest addressed the merits of conversion. Nor to a creditor like Frank Mitan is a dismissal order of equal moment to a conversion order. Under the former, his rights to protect his interest in secured property are re-activated and he has no risk (at that point) of losing entirely his interests in unsecured loans to the debtor. Under the latter, the creditor faces the prospect of a liquidation proceeding in which he may lose an interest in some or all of his unsecured loans to the debtor.

In reaching this conclusion, we have not lost sight of the serious allegations raised by the four unsecured creditors that the debtor and his father (Frank Mitan) are abusing the bankruptcy process. But at this point they are just that—allegations, which were raised principally at a hearing that Frank Mitan did not attend and about which he did not have notice. If they are true, the U.S.

Trustee and the creditors ought to be able to establish their validity at a properly noticed hearing. And if they are true, the bankruptcy court may impose an appropriate sanction.

In view of our disposition of the merits of this challenge to the bankruptcy court's decision, it follows that the district court erred in sanctioning Keith Mitan for filing an appeal to the district court with respect to this issue.

IV.

For these reasons, we reverse the bankruptcy court's conversion decision, reverse the district court's sanctions order and remand the case for further proceedings consistent with this decision.