district court's May 21, 1999 order. But, as Brighton Township counters, "this was not the reason for the District Court's denial of Brighton's explicit requests. Instead, the District Court made clear its belief that 'no additional evidence is required to address the areas remanded to the trial court.'" Reply Br. at 8 (quoting J.A. at 420).

Under the facts of the present case, we hold that a new evidentiary hearing on remand is necessary. Brighton Township's proposed new evidence, standing alone, was not sufficient to require an evidentiary hearing on remand. Considering that a new district judge was assigned to the case on remand, however, and the changed legal standards announced in *Brighton I*, we believe that the threshold for a new evidentiary hearing on remand, as unclear as it may be, was crossed.

### III. CONCLUSION

For the foregoing reasons, we **VACATE** the district court's judgment and **REMAND** for further proceedings consistent with this opinion, including an evidentiary hearing on the remanded issues.

---

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0090P (6th Cir.)
File Name: 02a0090p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*                                    No. 00-2175

TOWNSHIP OF BRIGHTON,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 94-75289—John Corbett O'Meara, District Judge.

Argued: January 25, 2002

Decided and Filed: March 13, 2002

Before: BOGGS and MOORE, Circuit Judges; DOWD,
District Judge.[*]

---

### COUNSEL

**ARGUED:** Edward V. Keelean, WILLIAMS, MULLEN, CLARK & DOBBINS, Detroit, Michigan, for Appellant. John T. Stahr, UNITED STATES DEPARTMENT OF

---

[*] The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Edward V. Keelean, Michael A. Sneyd, WILLIAMS, MULLEN, CLARK & DOBBINS, Detroit, Michigan, for Appellant.    John T. Stahr, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

————————

**OPINION**

————————

PER CURIAM. This case, involving the potential liability of Brighton Township, Michigan, for recovery costs under § 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), is before this panel a second time. *See United States v. Township of Brighton*, 153 F.3d 307 (6th Cir. 1998) [hereinafter "*Brighton I*"]. We hold that the district court failed to obey the mandate of our *Brighton I* opinion on remand. For this reason, we **VACATE** the district court's judgment and **REMAND** for further proceedings. We also specifically instruct the district court to reopen the record on remand and hold an evidentiary hearing on the issues in dispute.

## I. BACKGROUND

The Superfund site at issue in this long-running litigation consists of approximately fifteen acres in Brighton Township, Michigan (hereinafter "Brighton Township"), currently owned by Jack Collett and previously owned by his father, Vaughan Collett (hereinafter collectively "Collett"). In October 1989, the EPA screened the site for the release or potential release of hazardous materials and discovered approximately 300 drums containing hazardous materials on the site. After further study at the site, the EPA removed approximately 250 drums and contaminated soil from the site; this action was completed in November 1990. Collett is "probably judgment proof," *Brighton I*, 153 F.3d at 313 n.5 (Boggs, J.); the federal government sued Brighton Township

divisibility, and quoted a sentence or two from *Brighton I*, without analyzing the facts in light of the applicable law. Even if, as the government asserts, the district court's conclusions were consistent with *Brighton I*, its opinion does not comport with the "spirit" of the mandate, which required, at minimum, some application of the law to the facts of the present case.

Given that the district judge failed to implement the mandate of this court on remand, we vacate the district court's judgment and remand, again, for further proceedings — i.e., for the district judge to apply the standards announced in *Brighton I*. We recognize that a second remand further prolongs this already lengthy litigation, but a second remand is the only result consistent with this court's first remand of the matter to the district court.

On second remand, the district court is instructed to hold a hearing to permit the parties to present new evidence based on the standards announced in *Brighton I*. Brighton Township argues in this appeal that it would have presented different evidence with respect to divisibility at the original trial "had it known the standard under which the issue of divisibility was to be analyzed." Appellant's Br. at 36. In its post-*Brighton I* brief to the district court, Brighton Township stated that, if granted a hearing, it would present evidence highly relevant to the divisibility analysis: "Brighton Township proposes to produce expert testimony that there is sufficient spatial and hydraulic separation between the triangular-shaped Dump area . . . and the 'main drum' disposal area (where the response costs were incurred) such that they are unrelated sites." J.A. at 417-18 n.5. This evidence would have supported the township's geographic divisibility argument under the standard announced in *Brighton I*.

The township, however, was never given an opportunity to present this evidence. The government argues, in effect, that this was the township's own fault because it did not submit an outline of proposed further proceedings, as directed by the

based on geographic or volumetric bases by quoting from *Brighton I* itself.

Although, as the government argues, the district court's findings of fact potentially support the conclusions that the district court reached, it is not clear to us that the district court engaged in the analyses mandated by *Brighton I*. In short, the problem is not that the district court erred in the conclusions that it reached, but rather that it failed to explain at all, under the governing legal standards, *how* it reached its conclusions.

## II.  ANALYSIS

We have held that "lower courts must adhere to the commands of a superior court." *Brunet v. City of Columbus*, 58 F.3d 251, 254 (6th Cir. 1995) (quotation omitted).

[U]pon remand of a case for further proceedings after a decision by the appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal.  The trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.

*Id.* (quotations omitted).  *See also Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 569-70 (6th Cir. 2001) (same); *Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Natural Res.*, 71 F.3d 1197, 1202 (6th Cir. 1995) ("The customary procedure on remand creates a duty on the part of lower courts . . . to obey the terms of the mandate and to carry it into effect.").

The district court in the present case failed to implement either the letter or the spirit of this court's mandate.  With respect to the "letter" of the remand, the district judge did not apply the *Bestfoods* standard to the facts of the present case; instead the court merely stated a conclusion without any analysis whatsoever.  The district court did not apply the principles advanced in *Brighton I* for considering the divisibility of harm; again, it stated conclusions regarding

for recovery costs in 1994.  The government's theory is that Brighton Township operated at least three acres of the fifteen-acre Superfund site for the period 1960-1973 as the "Brighton Township dump" and thus is liable as an operator of the whole site.  In *Brighton I*, Judges Boggs and Moore concluded that the whole site constitutes one "facility," under § 107(a)(2) of CERCLA,[1] and thus that Brighton Township is potentially liable for all recovery costs incurred by the federal government, even though the township dump consisted of only three acres of the Collett property.  *See Brighton I*, 153 F.3d at 313 (Boggs, J.) ("Collett used the entire property as a dump, and so it is appropriately classified as a single facility."); *id.* at 323 (Moore, J.) ("I do not disagree . . . with Judge Boggs's conclusion that the entire area should be considered a facility . . . .").  The facts of the case are further outlined in Judge Boggs's and Judge Moore's *Brighton I* opinions.  *See* 153 F.3d at 310-11, 323.

After a three-day bench trial, the district court held on March 13, 1996, that Brighton Township was liable for recovery costs as an operator of the facility and that Brighton Township was jointly and severally liable for all recovery costs at the site, i.e., that the costs were not divisible between Brighton Township and Collett. On appeal, this panel vacated the judgment and remanded to the district court for reconsideration of the township's liability as an operator and the divisibility of the recovery costs.

*Brighton I* produced three separate opinions but no majority opinion; despite the fragmented nature of the panel, however, *Brighton I* provided the district court with standards for defining "operator" liability under CERCLA and for determining whether the recovery costs incurred by the government were divisible.  Specifically, Judges Boggs and Moore agreed that *United States v. Bestfoods*, 524 U.S. 51

---

[1] This provision subjects "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of" to CERCLA liability. 42 U.S.C. § 9607(a)(2).

(1998), provided the appropriate standard for determining whether Brighton Township was liable as an "operator" of the facility in question,[2] and Judges Boggs and Dowd agreed with respect to the standards governing the divisibility analysis.[3] Thus, the panel remanded the case to the district court "for further proceedings" on these issues. *See Brighton I*, 153 F.3d at 310 (Boggs, J.).

---

[2]On this point, Judge Boggs's opinion, which announced the judgment of the court, stated: "We vacate [the district court's] finding of liability and remand for further proceedings." *Brighton I*, 153 F.3d at 310. As to the nature of these further proceedings, Judge Boggs stated: "[W]e cannot conclude that Brighton Township was or was not an operator of the facility. This inquiry is properly left to the district court, *utilizing the proper standard that we have set forth today*." *Id.* at 315 (emphasis added). Thus, Judge Boggs's opinion required the district court to apply "the proper standard," i.e., the *Bestfoods* standard for operator liability. Similarly, Judge Moore's opinion, concurring in the result only, stated:

> Because the district court below did not have a clear standard guiding its application of the "actual control" test, I would remand this issue to the district court so that it may reconsider whether the totality of the circumstances demonstrate that Brighton Township's activities in relation to the dump site involved actual control over the facility such that the Township should be considered an operator under CERCLA.

*Id.* at 327 (Moore, J.). Although Judge Moore would have also provided the district court with additional factors to consider in making this determination, *see id.* at 327-28, she agreed with Judge Boggs to the extent that the governing standard was provided by *Bestfoods*.

[3]Judges Boggs and Dowd concurred in adopting the divisibility analysis found in Restatement (Second) of Torts § 433A (1965) and in remanding the case for further proceedings on that issue. Along these lines, Judge Boggs's opinion stated: "Although we find Brighton Township's proposed bases for apportionment to be only somewhat convincing, the district court, upon reviewing its fuller record and applying the principles we assert above, may reach different conclusions." *Id.* at 319 (Boggs, J.).

On remand, the district court[4] considered post-appeal briefs from the parties and offered the parties an opportunity to present outlines, in proffer form, of proposed additional evidence to be presented, if necessary. Neither party offered such an outline of proffered evidence, and thus the district court considered only the existing trial record and post-appeal briefs in issuing new findings of fact and conclusions of law in March 2000. The district court reached the same conclusion on remand as it had the first time, holding, on August 3, 2000, that Brighton Township was liable for recovery costs as an operator of the dump facility and that the costs were not divisible.

In reaching this conclusion, however, the district court failed to explain *why* Brighton Township was liable as an operator or *why* the harms were not divisible. With respect to Brighton Township's operator status, the district court stated, in summary fashion, that "[f]rom approximately 1960 to 1973, Brighton Township was the 'operator' of the Site within the meaning of [CERCLA]." Joint Appendix (J.A.) at 427. The district court did not explain how it arrived at this conclusion, which of its forty findings of fact triggered this conclusion, or to what extent Brighton Township actually macromanaged the facility in question. The *Bestfoods* inquiry advanced by Judges Boggs and Moore in *Brighton I* was not addressed by the district court, which did not cite *Bestfoods*. Indeed, the district court did not state the standard it had applied in reaching its conclusion regarding the township's operator status, despite the parties' more-than-adequate briefing of this issue. Similarly, on the issue of the divisibility of the harm, the district court stated that "Brighton Township has failed to carry its burden of establishing any basis for divisibility of harm in order to avoid the imposition of joint and several liability." J.A. at 428. It then rejected Brighton Township's arguments that the harms are divisible

---

[4]Following remand, the case was assigned to District Judge John Corbett O'Meara following Senior District Judge Horace W. Gilmore's retirement. Judge Gilmore presided over the 1996 bench trial in this matter.