RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0253p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re: KENNETH M. MITAN,

　　　　　　　　　　　　　　　*Debtor.*

_____

FRANK J. MITAN,

　　　　　　　　　　　　　　*Plaintiff-Appellant,*

　　　v.

LEONARD DUVAL, *et al*.,

　　　　　　　　　　　　　*Defendants-Appellees.*

No. 07-1915

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-15005—Bernard A. Friedman, District Judge.

Submitted: December 4, 2008

Decided and Filed: July 17, 2009

Before: CLAY and GIBBONS, Circuit Judges; STAMP, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** Keith J. Mitan, MITAN & ASSOCIATES, West Bloomfield, Michigan, for Appellant. Mark R. Fox, FRASER TREBILCOCK DAVIS & DUNLAP, P.C., Lansing, Michigan, Erika D. Hart, Dean R. Nelson, Jr., CHARLES J. TAUNT & ASSOCIATES, PLLC, Birmingham, Michigan, for Appellees.

　　　GIBBONS, J., delivered the opinion of the court, in which STAMP, D. J., joined. CLAY, J. (pp. 16-20), delivered a separate dissenting opinion.

_____

[*]The Honorable Frederick P. Stamp, Senior United States District Judge for the Northern District of West Virginia, sitting by designation.

1

———————————

**OPINION**

———————————

JULIA SMITH GIBBONS, Circuit Judge.  Creditor Frank J. Mitan ("Frank"), the father of debtor Kenneth J. Mitan ("Kenneth"), appeals from the order of the district court converting Kenneth Mitan's bankruptcy case from Chapter 11 to Chapter 7 *nunc pro tunc* to February 9, 2004.  Frank argues that the bankruptcy court was without power to issue a retroactive order converting the bankruptcy estate.  In this issue of first impression, we hold that under the circumstances of this case the bankruptcy court did have the power to issue the retroactive conversion order.  Consequently, we affirm the judgment of the bankruptcy court and remand this case to that court for further proceedings.

**I.**

This appeal arises out of a voluntary bankruptcy petition originally filed in the Central District of California.  On May 20, 2003, debtor Kenneth Mitan filed his bankruptcy petition listing assets from $100,001 to $500,000 and debts from $1 million to $10 million.  Kenneth later amended his complaint to reflect that his total estimated debts exceeded $30 million. The plurality of the 131 creditors listed represent unsecured claims arising from lawsuits against Kenneth.  The creditors allege, and state court judgments reflect, that Kenneth engaged in a scheme under which he purchased extant businesses, stripped the businesses of their assets through quick sales, and then refused to pay the original owners of the businesses the agreed upon sales price.  Thus, the former owners were left with neither the purchase price to which they were entitled nor any recoverable assets from the businesses that they had sold.  Upon learning of Kenneth's California filing, the creditors moved for the bankruptcy court to transfer the petition to the Eastern District of Michigan, where Kenneth actually resides and a number of the creditors had their places of business.  Kenneth moved to dismiss the case instead.  The California bankruptcy court sided with the creditors and transferred the case to Michigan by an order dated October 7, 2003.  The Ninth Circuit's Bankruptcy

Appellate Panel affirmed the decision to transfer on December 22, 2003, and invited the creditors to file a motion for sanctions against Kenneth.

Upon transfer, the Michigan bankruptcy court scheduled a hearing at which neither Kenneth nor the creditors appeared. The bankruptcy court consequently dismissed the case on January 12, 2004. The very next day, the creditors filed a motion for reconsideration in which they explained their absence as an inadvertent mistake and Kenneth's absence as calculated. The creditors noted that through his absence, Kenneth had gained exactly the result the bankruptcy court in California had denied him – dismissal of the case. On February 9, 2004, the bankruptcy court held a hearing and agreed to reopen the case. The court held that "a single unified intensive investigation into Mr. Mitan's affairs is appropriate" to prevent Kenneth from continuing what the creditors characterized as his game of "catch me if you can." At the same hearing, the bankruptcy court *sua sponte* converted Kenneth's case from Chapter 11 to Chapter 7. Frank appealed to this court; and we reversed the bankruptcy court, finding that it had failed to give the required notice prior to its hearing on the conversion issue. *Mitan v. Duval* (*In re Mitan*), 178 F. App'x 503, 504 (6th Cir. 2006).

On remand, the bankruptcy court issued an order to show cause why it should not convert the case to Chapter 7 *nunc pro tunc* to the date of the original order that we had reversed. The bankruptcy court scheduled the hearing for twenty-five days after the issuance of the notice. All parties appeared at the October 23, 2006 hearing; and all parties expressing an opinion, except for Frank, supported the *nunc pro tunc* conversion to Chapter 7. The Trustee stated that Kenneth had refused to cooperate in any fashion with the Trustee's efforts and had refused to turn over all of the requested documents. The Trustee admitted that as a result of this stonewalling only $1,007.36 was in the bankruptcy estate. Creditors other than Frank noted that during the period between the prior conversion of this case to Chapter 7 and the issuance of our mandate reversing that order, the bankruptcy court had held that several of the claims against Kenneth were not subject to discharge.

In his arguments before the bankruptcy court, Frank admitted that he had failed to give notice to the Trustee of his appeal to the Sixth Circuit. Frank also admitted that he had failed to seek a stay of the bankruptcy court's conversion order, which would have prevented the Trustee from compromising any claims or seeking judgments as to the dischargeability of claims. Frank excused this oversight by saying that he had his "hands full."[1] Frank also did not contest that it was inappropriate for the case to remain in Chapter 11. Instead, Frank wanted the bankruptcy case dismissed. However, because the show cause order did not mention dismissal, the bankruptcy court could not grant dismissal at the hearing because of a lack of proper notice. *See* Fed. R. Bankr. P. 2002(a)(4) (requiring at least twenty days notice prior to a hearing on dismissal). Frank argued that because the bankruptcy estate had almost no assets, dismissal would not adversely affect the creditors; and the parties could file a new petition when circumstances changed. Frank declined to offer an opinion as to what effect dismissal would have on the one already compromised claim and the other prior rulings of the bankruptcy court.

After hearing oral arguments, the bankruptcy court granted the creditors' request to convert the case to Chapter 7 *nunc pro tunc* to February 9, 2004. The bankruptcy court found that its order did not violate our mandate and held that it had the authority to enter a *nunc pro tunc* conversion order, citing 11 U.S.C. § 105, Bankruptcy Procedure Rule 1001, and the bankruptcy court's "inherent authority." The bankruptcy court concluded by balancing the interests of the various parties. The court found that dismissal of the case would undo the significant work of the Trustee and the court, including compromising a claim, holding that several claims were not subject to discharge, and investigating where Kenneth's assets were located. The court pointedly found that all of these circumstances could have been avoided had Frank sought a stay of the conversion order pending appeal. Finally, the bankruptcy court held that rather

---

[1] Frank's counsel is his other son Keith J. Mitan, the brother of debtor Kenneth Mitan. The Michigan state courts have held both Kenneth and Keith Mitan in criminal contempt for actions taken in regard to litigation there concerning Kenneth's business activities. *See In re Mitan*, Nos. 222230 / 222231, 2002 Mich. App. LEXIS 1294 (Mich. Ct. App. Sept. 17, 2002).

than suffering harm, all of the creditors, including Frank, would benefit by a conversion of the case to Chapter 7 rather than an outright dismissal.

On June 4, 2007, the district court confirmed the order of the bankruptcy court. Frank timely appealed this confirmation.

## II.

On appeal, Frank raises three primary arguments as to why the bankruptcy court lacked the power to enter its order retroactively converting the case to Chapter 7 following our remand order. Frank first asserts that the bankruptcy court's order violated our mandate from the prior appeal. Next, he questions the power of the bankruptcy court to enter such a *nunc pro tunc* order under any circumstances. Finally, Frank asserts that the bankruptcy court's conversion order was an abuse of discretion. We consider each argument in turn.

We "review[] a bankruptcy court's decision directly, not the district court's review of the bankruptcy decision." *AMC Mortg. Co. v. Tenn. Dep't of Revenue* (*In re AMC Mortg. Co.*), 213 F.3d 917, 920 (6th Cir. 2000) (citation omitted). "The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed *de novo*." *Id.* (citation omitted); *see also* Fed. R. Bankr. P. 8013; *Hardin v. Caldwell* ( *In re Caldwell*), 851 F.2d 852, 857 (6th Cir. 1988). "Clear error occurs only when [we are] left with the definite and firm conviction that a mistake has been committed. If there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003) (internal quotation marks and citation omitted).

## A.

Frank contends that the bankruptcy court violated our mandate by retroactively converting the case to Chapter 7 on remand. Correctly noting that trial courts "must adhere to the commands of a superior court," Frank argues that the bankruptcy court violated both the letter and spirit of the mandate rule by its actions. *United States v. Twp. of Brighton*, 282 F.3d 915, 919 (6th Cir. 2002) (*per curiam*). Both the Trustee and

the creditor appellees respond that the bankruptcy court did not violate our mandate. Instead, they argue that our mandate only addressed the propriety of the notice provided and did not restrain the bankruptcy court from entering a retroactive conversion order on remand after holding a properly-noticed hearing.

To determine whether the bankruptcy court violated our mandate, we must examine our April 2006 holding. We framed the issue presented as whether Frank "had not received notice of the hearing" in compliance with the Bankruptcy Rules prior to the bankruptcy court's original conversion of the case. *In re Mitan*, 178 F. App'x at 504. After finding that Frank had standing to appeal as a creditor, we agreed that the bankruptcy court had erred in failing to "giv[e Frank] notice and an opportunity to be heard." *Id.* at 506. In reversing the bankruptcy court, we noted:

> In reaching this conclusion, we have not lost sight of the serious allegations raised by the four unsecured creditors that the debtor and his father (Frank Mitan) are abusing the bankruptcy process. But at this point they are just that – allegations, which were raised principally at a hearing that Frank Mitan did not attend and about which he did not have notice. If they are true, the U.S. Trustee and the creditors ought to be able lo [*sic*] *establish their validity at a properly noticed hearing*. And if they are true, the bankruptcy court may impose an appropriate sanction.

*Id.* at 509 (emphasis added). We then reversed the sanctions the district court had imposed on Frank's counsel for filing a frivolous appeal. *Id.*

From the above, it is clear that the plain language of our prior opinion not only did not preclude the bankruptcy court from taking action following a properly noticed hearing but also ordered it to do so. *See id.* (stating that the bankruptcy court may order an "appropriate sanction" once it holds "a properly noticed hearing"). Following the release of our opinion in April 2006, the bankruptcy court issued its show cause order on September 28, 2006. The hearing took place twenty-five days later. One cannot fairly construe any of the language from our prior opinion as foreclosing the bankruptcy court's ability to enter a conversion order upon remand.

The primary case cited by Frank, *Township of Brighton*, is inapposite. In *Township of Brighton*, we reversed the district court and ordered it to apply "the proper standard" for determining whether the township was liable under the Comprehensive Environmental Response, Compensation, and Liability Act. 282 F.3d at 917-18 & n.2. On remand, the district court not only failed to state what standard it was applying but also failed to cite at all the case we ordered it to follow. *Id.* at 918. On a subsequent appeal, this court again reversed, declaring that the district court had violated both "the letter [and] the spirit of this court's mandate." *Id.* at 919.

Frank suggests that by entering the same order we previously reversed – even after all parties had received proper notice – the bankruptcy court violated the spirit of our mandate. A review of our case law quickly reveals this to be a mistaken premise. In the context of criminal sentencing, an area where the scrutiny we must apply is greater than in the context of civil cases such as bankruptcy, we regularly affirm sentences imposed by district courts upon remand that are exactly the same as those we have reversed previously because of procedural error. *See, e.g.*, *United States v. Jackson*, Nos. 06-5970/ 5840, 2009 U.S. App. LEXIS 1706, at *2 (6th Cir. Jan. 27, 2009) (affirming where the district court "again sentenced Jackson to 360 months of imprisonment"). This is the case even when the procedural error was constitutional in nature. *See, e.g.*, *id.* at *2 (affirming the sentences imposed by the district court upon a remand to correct the district court's constitutional error of treating the Sentencing Guidelines as mandatory); *United States v. Merrell*, 213 F. App'x 402, 403-404 (6th Cir. 2007) (same). Our previous reversal in this proceeding was to correct a procedural error: lack of proper notice. *In re Mitan*, 178 F. App'x at 506. On remand, the bankruptcy court corrected its error, gave proper notice, and therefore did not violate our mandate by entering the same order it had previously issued. *Cf. Jackson*, 2009 U.S. App. LEXIS 1706, at *1-2; *Merrell*, 213 F. App'x at 403-04. Therefore, we hold that Frank's first assignment of error is without merit.[2]

---

[2]The dissent reasons that the bankruptcy court "engaged in procedural maneuvering" to circumvent our prior mandate reversing the bankruptcy court's initial conversion of this case from Chapter 11 to Chapter 7. (Dis. Op. at 17.) The dissent reaches this conclusion by confusing a procedural ruling with a substantive one, as is made evident by the two principal cases it cites. Far from supporting the

## B.

Frank next contends that the bankruptcy court lacked the power to enter an order converting the case *nunc pro tunc* to Chapter 7. Frank first argues that such an order violates Federal Rules of Bankruptcy Procedure 2002(a) and 9006(c) by effectively eliminating the twenty-day notice requirement. Frank then argues that the bankruptcy court's order cannot find its basis in the equitable powers granted to the court by 11 U.S.C. § 105 because "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988).

The Trustee and creditors respond that the bankruptcy court's order does not violate either Bankruptcy Rule 2002(a) or 9006(c) because bankruptcy courts have the power to enter such retroactive conversion orders. Both the Trustee and creditors, however, candidly admit that there is no case law in our circuit or any other specifically holding that bankruptcy courts have the power to enter such retroactive conversion orders. Nonetheless, they point to several decisions affirming *nunc pro tunc* orders in other bankruptcy contexts and ask us to adopt the two-part test enunciated in *Cushman*

---

dissent's position, the Federal Circuit in *Chemlawn Services Corp. v. GNC Pumps, Inc.*, 823 F.2d 515, 518 (Fed. Cir. 1987), actually takes pains to note that its decision reversing the district court is not on the merits. There is no language whatsoever in *Chemlawn* prohibiting the district court on remand from entering the same preliminary injunction, once the district court cured its procedural error of only entering its findings of fact and conclusions of law after the appellant had already filed its notice of appeal. *Id.* This is with good reason. Upon remand, the district court refused to allow the parties to "reopen and retry issues already ruled upon," held a proper hearing on new facts that had developed in the interim, entered the required factual findings and conclusions of law, and once again issued a preliminary injunction. *Chemlawn Servs. Corp. v. GNC Pumps, Inc.*, 690 F. Supp. 1560, 1563 (S.D. Tex. 1988).

*Chase Automotive Finance, Inc. v. Kinion* (*In re Kinion*), 207 F.3d 751 (5th Cir. 2000), while actually involving a bankruptcy case, is similarly unhelpful to the dissent's argument. In *Chase Automotive*, the district court applied a local procedural rule to alter the status quo by nullifying a creditor's lien on the debtor's car. *Id.* at 753-54. The local rule was in direct contravention of the Bankruptcy Code. *Id.* at 755. Conversely, the dissent can point to no provision of either the Bankruptcy Code or Bankruptcy Rules that prohibits the bankruptcy court's action in this case. Equally as important, *Chase Automotive* – as with *Chemlawn* – does not involve the mandate rule. Even the dissent's brief quotation from *Chase Automotive* is incomplete, as the Fifth Circuit went on to chastize the bankruptcy court for not using the debtor's rehearing motion to correct its prior procedural errors. *Compare* Dis. Op. at 18 (suggesting that rehearing could not cure the defect), *with Chase Auto.*, 207 F.3d at 758 (rehearing "should have been granted to correct the procedural errors that led to the unauthorized stripping of Chase's valid lien"). Ultimately, as even the dissent must admit in its second paragraph, our prior reversal was "a result of the deficiency in notice," not the substance of the bankruptcy court's order. (Dis. Op. at 16.)

*& Wakefield, Inc.* v. *Keren Ltd. Partnership* (*In re Keren Ltd. P'ship*), 189 F.3d 86, 87-88 (2d Cir. 1999) (*per curiam*), to determine when retroactive relief is appropriate.

**1.**

We will first address Frank's argument that the Bankruptcy Rules prohibit the bankruptcy court's order.  The proper interpretation of the Bankruptcy Rules is a question of law, which we review *de novo*.  *Rogers v. Laurain* (*In re Laurain*), 113 F.3d 595, 597 (6th Cir. 1997).  Bankruptcy Rule 2002(a)(4) provides that parties in a Chapter 11 case shall receive "at least 20 days' notice by mail of . . . the hearing on the dismissal of the case or the conversion of the case to another chapter."  Bankruptcy Rule 9006(c) provides that "when an act is required . . . to be done at or within a specified time by these rules[,]" a bankruptcy court "for cause shown may in its discretion with or without motion or notice order the period reduced."  The advisory committee note to Rule 2002(a) cautions that "the rule does not contain a provision allowing the court to dispense with notice."  In this case, the bankruptcy court on remand issued its show cause order on September 28, 2006.  The hearing took place on October 23, 2006, twenty-five days later.  By the plain terms of the rule, the bankruptcy court gave Frank five more days notice than the rule requires.

Frank attempts to respond to this plain text analysis by arguing that the bankruptcy court effectively gave no notice. Because the hearing took place on October 23, 2006, but the effective date of the *nunc pro tunc* order was February 9, 2004, Frank argues that the proper date the bankruptcy court should have given notice was in January 2004.  The text of the rule refutes this argument.  The rule requires "20 days' notice by mail of . . . *the hearing on the dismissal of the case or the conversion of the case to another chapter*."  Fed. R. Bankr. P. 2002(a)(4) (emphasis added).  Rules "must be read in a straightforward and commonsense manner." *In re Laurain*, 113 F.3d at 597 (internal quotation marks and citation omitted).  The rule does not provide for notice twenty days before the effective date of the court's order but rather twenty days before the *hearing*.  "When we can discern an unambiguous and plain meaning from the language of a rule, our task is at an end."  *Id.*  The language of Rule 2002(a) is clear.  The bankruptcy court

provided twenty-five days notice before the hearing.  This is all the rule requires.  We therefore hold that the bankruptcy court's retroactive order did not violate the Bankruptcy Rules.

**2.**

A more difficult question arises when considering whether the equitable powers granted to the bankruptcy court under 11 U.S.C. § 105(a) include the power to enter such a *nunc pro tunc* conversion order.  The section provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a) (italics added).  We have held that "section 105(a) grants the Bankruptcy Court equitable power," but have warned that such power is constrained by the provisions of the Bankruptcy Code.  *Childress v. Middleton Arms, L.P.* (*In re Middleton Arms, Ltd. P'ship*), 934 F.2d 723, 724 (6th Cir. 1991) (citing *Norwest Bank Worthington*, 485 U.S. at 206).  A leading treatise notes that "[s]uch *nunc pro tunc* orders are permissible so long as they 'are necessary or appropriate to carry out the provisions of . . . [T]itle [11].'"  2-105 *Collier on Bankruptcy*-15th Edition Rev. § 105.04 (quoting *Thinking Machs. Corp. v. Mellon Fin. Servs. Corp.* (*In re Thinking Machs. Corp.*), 67 F.3d 1021, 1028 (1st Cir. 1995)).  The same treatise cautions, "*nunc pro tunc* orders have been denied when they are not 'appropriate,' as when they are sought to validate an action arrived at by a process not in accordance with the Code." 2-105 *Collier on Bankruptcy* § 105.04(a) (quoting *Schwartz v. Aquatic Dev. Group, Inc.* (*In re Aquatic Dev. Group, Inc.*), 352 F.3d 671 (2d Cir. 2003)).

Two cases cited by the creditors, while not directly on point, provide support for the proposition that bankruptcy courts can issue orders with retroactive effect when the equities demand.  *Albany Partners, Ltd. v. Westbrook* (*In re Albany Partners, Ltd.*), 749 F.2d 670, 671-73 (11th Cir. 1984), involved an appeal from the bankruptcy court's

decision to lift retroactively the automatic stay in order to ratify a foreclosure sale that had already occurred. Albany Partners was the owner of a Ramada Inn purchased by a predecessor partnership. The predecessor partnership and its successor Albany Partners shared two of the same partners. *Id.* at 671-72. Albany Partners had failed to record the deed through which it gained ownership of the inn. It also chose not to intervene in the proceeding in which the state court ordered the foreclosure sale. *Id.* at 672. This was even though Albany Partners had notice of the state court proceedings. *Id.* The Eleventh Circuit found that where a party had filed a bankruptcy petition in bad faith, a bankruptcy court could lift the automatic stay retroactively to prevent "abuse[s of] the judicial process." *Id.* at 674. As Albany Partners had withheld the deed, failed to intervene, and filed the bankruptcy petition at the last minute to frustrate its creditors, the Eleventh Circuit found that this case represented one of the "appropriately *limited* circumstances" where retroactive relief was proper. *Id.* at 675 (emphasis in original). *See also In re Elder-Beerman Stores Corp.*, 195 B.R. 1012 (Bankr. S.D. Ohio 1996) (following *In re Albany Partners* bad faith test when refusing to lift a bankruptcy stay retroactively). However, the Eleventh Circuit also held that 11 U.S.C. § 362(d) expressly authorized such retroactive orders by its use of the term "annulling." *In re Albany Partners*, 749 F.2d at 675. No such clear statutory authorization appears in the provisions of the bankruptcy code governing the conversion of cases from one chapter to another. *See* 11 U.S.C. § 1112. Nonetheless, bankruptcy courts, as courts of equity, may always consider the presence of bad faith on the part of one of the parties when fashioning relief. *See Schilling v. Heavrin* (*In re Triple S Rests., Inc.*), 422 F.3d 405, 416 (6th Cir. 2005) (citing *Doss v. Green* (*In re Green*), 986 F.2d 145, 150 (6th Cir. 1993)).

The creditors also cite the test enunciated by the Second Circuit for when courts should approve *nunc pro tunc* appointments of professionals in bankruptcy proceedings. The Second Circuit held that "[n]unc pro tunc approval should only be granted in narrow situations and requires that (i) if the application had been timely, the court would have authorized the appointment, and (ii) the delay in seeking court approval resulted from extraordinary circumstances." *In re Keren Ltd. P'ship*, 189 F.3d at 87 (citing *In re Jarvis*, 53 F.3d 416, 420-21 (1st Cir. 1995)). The value of this citation is limited,

however, by the fact that *nunc pro tunc* appointment of professionals is more common than the type of retroactive relief granted by the bankruptcy court in this case. *See* 3-327 *Collier on Bankruptcy* § 327.03(3) (noting that bankruptcy courts have regularly allowed the retroactive appointment of professionals).

Thus, our search has left us with no clear authority on the bankruptcy court's action.[3] In light of the broad grant of equitable power to bankruptcy courts found within Section 105(a), we believe that the bankruptcy court had the power to grant retroactive relief in this "very absurd situation." (Motion Hearing Tr. at 4.) No statutory provision prohibits the bankruptcy court's order; and a traditional weighing of the equities tilts heavily in favor of the issuance of the *nunc pro tunc* order. The bankruptcy court had ample justification to find that both Kenneth and Frank had acted in bad faith. *See In re Triple S Rests., Inc.*, 422 F.3d at 416 (noting that bad faith is traditionally considered when fashioning equitable relief (citation omitted)); *cf. In re Albany Partners*, 749 F.2d at 675 (retroactively lifting the automatic stay where debtor acted in bad faith). It is undisputed that Kenneth has refused to cooperate with the Trustee and has not turned over the documents the Trustee has requested. Furthermore, Kenneth originally filed this case in a jurisdiction in which he did not reside, resulting in a transfer of the case to Michigan and a suggestion by the Ninth Circuit that sanctions might be appropriate. The need for retroactive relief is solely because of Frank's perplexing refusal to seek a stay pending appeal of the bankruptcy court's prior conversion order. Frank's only explanation for neglecting to seek the stay was that he had his "hands full." Any holding that the bankruptcy court erred in retroactively converting the case would vacate the bankruptcy court's orders during the period from February 9, 2004 to October 23, 2006, regarding the non-dischargeability of several claims and force the creditors to relitigate

---

[3]While the parties have cited no case law where a bankruptcy court has converted a case *nunc pro tunc*, we have found one such case, *In re Sun Cliffe Inc.*, 143 B.R. 789 (Bankr. D. Colo. 1992). In *Sun Cliffe*, the bankruptcy court noted that it had converted the case "to a Chapter 7 case on January 8, 1990, *nunc pro tunc* January 5, 1990." 143 B.R. at 789. The petition was filed originally on June 20, 1988, as a Chapter 11 case. *Id.* However, other than to note that a bankruptcy court has converted a case retroactively before, the case is of little use to either party because the contested issue in *Sun Cliffe* was whether the IRS could continue to assess penalties and fees on past due taxes, not the retroactive conversion. *Id.* at 789-790. *Sun Cliffe* also involves a *nunc pro tunc* order covering three days while the order in this case covers more than two years – a difference of magnitude that further leads us to refrain from relying on this solitary example.

those issues. Effectively, it would give Kenneth the benefit of his continual refusal to cooperate and justify his abuse of the judicial process. *See* 11 U.S.C. § 105 (authorizing the bankruptcy court to issue "any order . . . to prevent an abuse of process"); *In re Albany Partners*, 749 F.2d at 675 (granting retroactive relief to prevent debtor from benefitting from its refusal to turn over a deed). Frank can point to no prejudice that will result to his position as a creditor because of the bankruptcy court's retroactive conversion, which is unsurprising given that none of the 130 other creditors found reason to object. *See* 2-105 *Collier on Bankruptcy* § 105.04 (noting that bankruptcy courts may "authorize the retroactive taking of action not governed by the Code when the benefit is great and the prejudice is small"). Because this case is full of extraordinary circumstances warranting equitable relief, we hold that the bankruptcy court did not err by entering a *nunc pro tunc* order converting the petition from Chapter 11 to Chapter 7. *In re Triple S Rests., Inc.*, 422 F.3d at 416; *see also Chase Auto.*, 207 F.3d at 754 (refusing to allow a party's "self-serving interpretation of bankruptcy procedure" to disrupt the normal administration of the bankruptcy estate).

### C.

Finally, Frank asserts that the bankruptcy court erred by converting the case from Chapter 11 to Chapter 7 as opposed to dismissing the petition outright. Frank cites our decision in *In re Winshall Settlor's Trust*, 758 F.2d 1136 (6th Cir. 1985), to support his contention that when there are no assets to distribute, the bankruptcy court should dismiss the petition. The Trustee candidly admits that he "has been largely unsuccessful in garnering [Kenneth's] assets." (Trustee's Br. at 17.) The Trustee does note the bankruptcy court's rulings that Kenneth may not discharge several of his judgment creditors, victims of Kenneth's fraudulent business practices, as a benefit provided by the proceedings. The creditors meanwhile assert that Kenneth seeks "a second bite at the discharge apple" and argue that more investigation needs to take place – particularly with regard to alleged hidden overseas assets – before this case is closed.

"The decision to dismiss or convert a Chapter 11 case falls within the sound discretion of the Bankruptcy Court and is thus reviewed only for an abuse of that

discretion." *Cain P'ship Ltd. v. Pioneer Inv. Servs. Co.* (*In re Pioneer Inv. Servs. Co*), Nos. 92-6090/ 92-6091/ 92-6092, 1994 U.S. App. LEXIS 8125, at *16 (6th Cir. Apr. 14, 1994) (citing *In re Abijoe Realty Corp.*, 943 F.2d 121, 128 (1st Cir. 1991)). First, in response to the fears of the creditors, we note that our affirmance of the bankruptcy court's *nunc pro tunc* order will prevent Kenneth from relitigating the discharge issue in any subsequent bankruptcy filing. *See* 11 U.S.C. § 523(a)(10) (barring discharge for a claim previously ruled to be not subject to discharge). This undercuts the creditors' concerns about the effect dismissal of Kenneth's petition could have.

However, Frank has provided us with no reason to find that the bankruptcy court abused its discretion. Frank's citation to *In re Winshall Settor's Trust* is inapposite. *Winshall Settlor's Trust* stands for the proposition that bankruptcy courts should dismiss petitions when "conversion to Chapter 7 would be futile." 758 F.2d at 1138. At the October 23, 2006, hearing on the conversion motion, the bankruptcy court found that dismissing this petition would not save further litigation. Dismissal would require further proceedings to determine what should happen with regard to the proceeds of the compromised claim and other interim orders. The bankruptcy court also agreed with the creditors and expressed concern that "there is perhaps more investigation of the debtor's assets that the trustee can do – *should do*." Unlike in *Winshall Settlor's Trust*, conversion here is not futile; and we can find no reason to disagree with the bankruptcy court's finding that more investigation is necessary to uncover the debtor's potential hidden assets.

Frank's citation to *In re Tornheim*, 181 B.R. 161 (Bankr. S.D.N.Y. 1995) is similarly unhelpful. In *Tornheim*, the bankruptcy court dismissed the case at the creditors' urging in order to prevent the debtors from using the bankruptcy process "to circumvent rather than serve the goals of the bankruptcy laws." 181 B.R. at 171. The debtors had failed to turn over documents to the trustee, failed to pay the necessary fees, had few creditors, and had no "free assets." *Id.* at 165. By contrast, Kenneth has many creditors owed more than $30 million; it is unclear whether Kenneth has any available assets; and dismissing the case could allow Kenneth to "circumvent . . . the goals of the

bankruptcy laws" by potentially avoiding satisfying his obligations while absconding with money hidden overseas. *Id.* at 171. Because of the deferential level of review, *see Cain P'ship Ltd.*, 1994 U.S. App. LEXIS 8125, at *16, and Frank's inability to specifically state exactly how he would be prejudiced by a conversion,[4] we hold that the bankruptcy court did not abuse its discretion in converting rather than dismissing the petition.[5]

### III.

For the foregoing reasons, we affirm the judgment of the bankruptcy court in its entirety and hold that the bankruptcy court did not err in retroactively converting the petition from Chapter 11 to Chapter 7 after proper notice. We therefore remand the case to the bankruptcy court for further proceedings.

---

[4]When asked by the bankruptcy court, "What is your client's position on whether a discharge should be entered here?" counsel responded, "It's not up to my client." When the bankruptcy court observed that the *nunc pro tunc* order would place Frank in a position where his claim would not be subject to a potential discharge, Frank referred to the proceedings in this court rather than answer the question. Thus, Frank has failed at all stages of the litigation to demonstrate how conversion prejudices his interests.

[5]In the final sentence of their brief, the creditors state: "Appellees also respectfully request an award of their attorney fees and costs incurred in having to respond to this instant appeal." The creditors provide no citation to authority or argument to support their last-sentence request. The creditors consequently have waived the issue. *See Grinter v. Knight*, 532 F.3d 567, 574 n.4 (6th Cir. 2008) ("[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (alteration in original) (internal quotation marks and citation omitted)).

———————

## DISSENT

———————

CLAY, Circuit Judge, dissenting.    The bankruptcy court's *nunc pro tunc* conversion order constituted a clear attempt to avoid the effect of this Court's invalidation of the bankruptcy court's earlier order converting the case from Chapter 11 to Chapter 7.    Because I conclude that the bankruptcy court's actions violated this Court's mandate, I respectfully dissent from the majority's conclusion that the bankruptcy court's *nunc pro tunc* conversion order was proper.

On February 9, 2004, the bankruptcy court *sua sponte* converted the Chapter 11 proceedings to a Chapter 7 liquidation.    Frank Mitan, a creditor in the bankruptcy proceedings, appealed the order, arguing that the bankruptcy court failed to provide notice as required by Rule 2002(a) of the Federal Rules of Bankruptcy Procedure.    This Court reversed the bankruptcy court's conversion order "[b]ecause the bankruptcy court erred in converting the case to a Chapter 7 liquidation without giving Frank Mitan notice . . . ."    *Mitan v. Duval* (*In re Mitan*), 178 F. App'x 503, 504 (6th Cir. 2006).    As a result of the deficiency in notice, this Court "remand[ed] the case for further proceedings consistent with [its] decision."    *Id.* at 509.

On remand, the bankruptcy court informed the parties that it was considering converting the case from Chapter 11 to Chapter 7, with retroactive effect as to the original date of conversion.    After receiving briefing from the parties and holding a hearing, the bankruptcy court entered an order converting the case *nunc pro tunc* effective February 9, 2004.[1]    In the same order, the bankruptcy court ordered that "[a]ll

---

[1]Literally meaning "now for then," the concept of *nunc pro tunc* "refers to situations in which the court's records do not accurately reflect its actions" and must be corrected.    *In re Singson*, 41 F.3d 316, 318 (7th Cir. 1994) (citations omitted).    In this case, the bankruptcy court's use of the *nunc pro tunc* order went far beyond correcting an omission or error in the record.    The order converted a case from Chapter 11 to Chapter 7, effective two years prior to the date of the order, and also validated two years of bankruptcy proceedings.    "[T]he function of a *nunc pro tunc* entry is not, by a fiction, to antedate the actual performance of an act which never occurred, but is to make the record conform to that which was actually done at the time it was done."    *In re Diamond Mortgage Corp.*, 77 B.R. 597, 600 (Bankr. E.D. Mich. 1987).    However, in this case, the bankruptcy court used the *nunc pro tunc* conversion order to "antedate the actual performance" of providing notice to Frank Mitan prior to converting the case in February of 2004, something which never occurred.    Accordingly, the use of *nunc pro tunc* in this case to cure

of the court's proceedings, orders and judgments entered after February 9, 2004 remain in full force and effect" (J.A. 68), thus reinstating the orders that had been rendered void as a result of this Court's judgment. The practical effect of the bankruptcy court's orders was to avoid the consequences of its previous violation of Rule 2002(a)'s notice requirement and the consequent reversal of its original conversion order by this Court.

Accordingly, the bankruptcy court failed to "proceed in accordance with the mandate" of this Court, as it was required to do. *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 570 (6th Cir. 2001). As this Court has made clear, a lower court "must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Id.* (internal quotation marks omitted). The bankruptcy court engaged in procedural maneuvering to avoid the effect of its failure to provide Frank Mitan with notice prior to converting the case from a Chapter 11 proceeding to a Chapter 7 proceeding. While the bankruptcy court provided notice in accordance with Rule 2002(a) prior to the October 2006 conversion hearing, its actions on remand nonetheless violated this Court's mandate. In doing so, the bankruptcy court reinstated its conversion order and the orders issued in the Chapter 7 case to enable it to proceed as if this Court had never reversed the bankruptcy court's prior conversion order.

Despite the bankruptcy court's disregard of this Court's decision, the majority concludes that there was nothing improper about the bankruptcy court's action because "we regularly affirm sentences imposed by district courts upon remand that are exactly the same as those we have reversed previously because of procedural error." (Majority Op. at 7.) However, the purpose of correcting a procedural error, such as failing to adequately explain the sentence imposed, is "'to allow for meaningful appellate review.'" *E.g.*, *United States v. Bolds*, 511 F.3d 568, 580 (6th Cir. 2007) (quoting *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 597 (2007)). In resentencing a defendant under such circumstances, the district court fulfills the purpose of the remand by

---

deficient notice and circumvent the effect of this Court's prior order was improper.

explaining its sentence to permit the appellate court to review the sentence imposed, and thus complies with the appellate court's mandate. Correcting a procedural error, such as providing a more thorough explanation for a sentence or treating the Guidelines as advisory rather than mandatory, might not change the defendant's ultimate sentence. However, in the sentencing context, the fact that the district court enters the same sentence does not violate the mandate of this Court because the problem was that the district court failed to provide a basis for appellate review of the sentence imposed.

In contrast, under the circumstances of this case, a prior panel of this Court determined that the bankruptcy court acted improperly in entering the conversion order on February 9, 2004, inasmuch as the bankruptcy court failed to provide Frank Mitan with the required notice prior to converting the case. Nonetheless, on remand, the bankruptcy court entered the same order, effective the same day as its invalidated conversion order. While a bankruptcy court possesses significant discretion as a court of equity,[2] it is improper for the bankruptcy court, under the circumstances of this case and taking into account this Court's mandate, to attempt to cure its deficient notice after the fact in this fashion. *See Chase Auto. Fin., Inc. v. Kinion* (*In re Kinion*), 207 F.3d 751, 757 (5th Cir. 2000) (concluding that the bankruptcy court never provided notice of the hearing regarding the challenge to the party's lien, and the "court's allowance of thirty days to file a motion for reconsideration cannot substitute for the before-the-fact protection of creditors' interests embodied in the adversary rules"); *cf. Chemlawn Servs. Corp. v. GNC Pumps, Inc.*, 823 F.2d 515, 517 (Fed. Cir. 1987) ("That the District Court eventually and belatedly entered finding of fact and conclusions of law . . . did not cure the defect of failing to do so at the time the preliminary injunction first issued and cannot retroactively legitimate that injunction." (footnote omitted)).[3]

---

[2] As other courts have recognized, despite the expansive nature of the bankruptcy court's equitable powers—including those granted under 11 U.S.C. § 105(a)—such authority "'is the power to exercise equity in carrying out the provisions of the Bankruptcy Code' not the broader power to invoke equity 'to further the purposes of the Code generally, or otherwise to do the right thing.'" *In re Aquatic Dev. Group, Inc.*, 352 F.3d 671, 680 (2d Cir. 2003) (Straub, J., concurring) (quoting *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 91 (2d Cir. 2003) (emphasis removed)).

[3] While the majority is correct that nothing in the Federal Circuit's opinion in *Chemlawn* prohibited the district court from entering a preliminary injunction on remand, the district court's action on remand is not the relevant district court action for purposes of this case. Instead, it is the district court's

To support its conclusion that the bankruptcy court did not violate this Court's mandate, the majority engages in a rewriting of this Court's 2006 decision reversing the conversion order. The majority concludes that "[o]ne cannot fairly construe . . . our prior opinion as foreclosing the bankruptcy court's ability to enter a conversion order on remand." (Majority Op. at 6.) While this may be literally true, the readily discernable intent of this Court's mandate indicates that this Court considered the February 9, 2004 order invalid due to lack of notice, making reinstatement of that same order, effective the same day, improper. Further, although this Court observed that the bankruptcy court might hold a hearing to evaluate the creditors' claims that Frank and Kenneth Mitan were abusing the bankruptcy process and determine whether sanctions would be appropriate, such an observation does not provide authority, as the majority appears to suggest, for the bankruptcy court to reinstate its invalidated conversion order.

---

attempt to "retroactively legitimate" an injunction that, at the time it was issued, failed to comply with Rule 52 of the Federal Rules of Civil Procedure. *Chemlawn Servs. Corp.*, 823 F.3d at 517. Based on this deficiency, the Federal Circuit vacated the district court's preliminary injunction. *See id.* at 518. Thus, the "procedural error" requiring remand was the district court's attempt to cure the defect by retroactively issuing findings of facts and conclusions of law—it was not solely, as the majority suggests, the entry of those findings "after the appellant had already filed its notice of appeal." (Majority Op. at 7 n.2.)

The majority also misrepresents the Fifth Circuit's opinion in *In re Kinion*. First, the local rule that the court found problematic was unrelated to the issue of the notice that the creditor received. The court found that, contrary to the Bankruptcy Code, which "permits reaffirmations of unsecured as well as secured debt," the local rule implied "that reaffirmations can only be approved for secured indebtedness." *In re Kinion*, 207 F.3d at 755. Thus, the fact that no Bankruptcy Code provision or Bankruptcy Rule prohibits the bankruptcy court's action in this case does not render *In re Kinion* inapposite. Moreover, although the court criticized the bankruptcy court for failing to grant the creditor's motion for reconsideration "to correct the procedural errors that led to the unauthorized stripping of Chase's valid lien," *id.* at 758, the court did not state that such a reconsideration hearing would necessarily "cure" the failure to provide notice. Instead, the failure to provide notice to the creditor that its lien was subject to challenge was only one of numerous procedural irregularities leading the court to find that the bankruptcy court abused its discretion. In fact, the court rejected the Kinions' argument on appeal that, "[a]lthough Chase had no prior notice that its lien could be avoided, any procedural defect arising from the lack of notice was allegedly cured by the . . . order permitting Chase to move for reconsideration." *Id.* at 754.

Because the bankruptcy court's actions on remand in this case failed to comply with this Court's mandate and appear to constitute an effort to evade compliance with this Court's instructions, I would reverse the decision of the district court upholding the bankruptcy court's entry of the *nunc pro tunc* order in this case. I therefore respectfully dissent.