ELECTRONIC CITATION:  2013 FED App.0001P (6th Cir.)
File Name:  13b0001p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re:   CREEKSIDE SENIOR APARTMENTS,　)
　　　L.P., *et al.*,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　No. 12-8023
　　　　　Debtors.　　　　　　　　　　　)
＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿　)

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky
Case No. 10-53019

Argued: February 12, 2013

Decided and Filed: March 25, 2013

Before: HARRIS, HUMPHREY, and PRESTON, Bankruptcy Appellate Panel Judges.

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

**COUNSEL**

**ARGUED:** Ellen Arvin Kennedy, DINSMORE & SHOHL LLP, Lexington, Kentucky, for Appellants.  Daniel E. Hitchcock, WYATT, TARANT & COMBS, LLP, Lexington, Kentucky, for Appellee.  ON BRIEF: Ellen Arvin Kennedy, DINSMORE & SHOHL LLP, Lexington, Kentucky, Robert D. Gordon, CLARK HILL PLC, Birmingtham, Michigan, for Appellants.   Daniel E. Hitchcock, WYATT, TARANT & COMBS, LLP, Lexington, Kentucky, for Appellee.

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

**OPINION**
＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

ARTHUR I. HARRIS, Bankruptcy Appellate Panel Judge.  The debtors in five jointly administered Chapter 11 cases ("Debtors") and their general partners ("General Partners") (collectively, "Appellants") appeal the bankruptcy court's dismissal of the Debtors' cases pursuant to 11 U.S.C. § 1112(b).  For the reasons that follow, we affirm.

# I.  ISSUES ON APPEAL

The issue presented by this appeal is whether the bankruptcy court abused its discretion in dismissing the Debtors' jointly administered Chapter 11 cases "for cause" pursuant to 11 U.S.C. § 1112(b).

# II.  JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit ("Panel") has jurisdiction to decide this appeal.  The United States District Court for the Eastern District of Kentucky has authorized appeals to the Panel, and no party has timely elected to have this appeal heard by the district court.  28 U.S.C. § 158(b)(6), (c)(1).  A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1).  For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted).  An order granting a motion to dismiss a Chapter 11 case "for cause" is final for purposes of appeal.  *AMC Mortg. Co. v. Tenn. Dep't of Revenue* (*In re AMC Mortg. Co.*), 213 F.3d 917, 920 (6th Cir. 2000).

The dismissal of a bankruptcy case "for cause" is reviewed for an abuse of discretion.  *Mitan v. Duval* (*In re Mitan*), 573 F.3d 237, 241 (6th Cir. 2009).  "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard."  *Kaye v. Agripool, SRL* (*In re Murray, Inc.*), 392 B.R. 288, 296 (B.A.P. 6th Cir. 2008) (citation omitted).  "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion."  *Barlow v. M.J. Waterman & Assocs., Inc.* (*In re M.J. Waterman & Assocs., Inc.*), 227 F.3d 604, 608 (6th Cir. 2000).

## III. FACTS

The Debtors in this appeal are five single asset real estate debtors. The Debtors filed for relief under Chapter 11 of the Bankruptcy Code in September and October 2010. Pursuant to an October 2010 order, the cases were jointly administered.

Each of the Debtors is a Kentucky limited partnership with a corresponding general partner, an administrative limited partner, and an investor limited partner. The Debtors are as follows:

| | |
|---|---|
| 10-53019 | In re Creekside Senior Apartments, Limited Partnership |
| 10-53298 | In re Nicholasville Greens, Limited Partnership |
| 10-53300 | In re Franklin Place Senior Apartments, Limited Partnership |
| 10-53301 | In re Pennyrile Senior Apartments, Limited Partnership |
| 10-53346 | In re Park Row Senior Apartments, Limited Partnership |

Each Debtor owns a parcel of real property on which it operates a low-income housing apartment complex ("LIHTC Properties"). The LIHTC Properties were developed in conjunction with the federal Low-Income Housing Tax Credit Program. *See* 26 U.S.C. § 42. In exchange for agreeing to rent and occupancy restrictions, the program provides a 10-year stream of tax credits to the owner of the property. A property must remain in compliance with the LIHTC Program for fifteen taxable years. 26 U.S.C. § 42(i). During this compliance period, tax credits may be recaptured from the taxpayer. 26 U.S.C. § 42(j). In the cases currently on appeal, the LIHTC Properties were put into service in 2005 and 2006, and the tax credit recapture periods expire in 2019 and 2020.

In order to acquire and/or construct the LIHTC Properties, the Debtors obtained financing from Bank of America, N.A. ("Bank"). As security for these loans, the Bank took a first mortgage lien on the Debtors' LIHTC Properties. All five notes matured before the Debtors filed for bankruptcy relief.

In November 2010, the Debtors filed an application to employ an appraiser to value the LIHTC Properties. The Debtors asserted that ascertaining the values of the properties was vital to proposing a joint plan of reorganization. The bankruptcy court approved the Debtors' application to employ on December 3, 2010.

Between December 2010 and February 2011, each Debtor made two small adequate protection payments to the Bank pursuant to 11 U.S.C. § 362(d)(3). These payments totaled $15,000 for all five LIHTC Properties. The Debtors have not made any adequate protection payments since February 2011.

On March 4, 2011, the Appellants filed a motion for a valuation hearing on the LIHTC Properties ("Valuation Motion"). The Appellants again asserted that determination of the values of the Bank's secured claims was vital to formulation of a Chapter 11 plan.

The bankruptcy court granted the Appellants' Valuation Motion and conducted a valuation hearing on August 18, 2011. The bankruptcy court issued an order setting the value of the Debtors' LIHTC Properties ("Valuation Order") on September 12, 2011. The bankruptcy court concluded that, for purposes of determining the value of the secured portion of the Bank's claims pursuant to 11 U.S.C. § 506(a), a determination of the fair market value of the Debtors' LIHTC Properties included consideration of the remaining federal low-income housing tax credits. After considering all the evidence, the bankruptcy court set the following values for the Debtors' real properties:

| LIHTC Property | Value of Real Estate | Value of Tax Credits | Total Value |
|---|---|---|---|
| Creekside Senior Apartments | $708,718.67 | $350,000 | $1,058,718.67 |
| Nicholasville Greens Townhomes | $307,475.86 | $160,000 | $467,475.86 |
| Franklin Place Senior Apartments | $371,244.42 | $445,000 | $816,244.42 |
| Pennyrile Senior Apartments | $446,188.44 | $755,000 | $1,201,188.44 |
| Park Row Senior Apartments | $727,427.01 | $865,000 | $1,592,427.01 |

(Valuation Order at 23-28, Bankr. Case No. 10-53019, ECF No. 252.)

On September 26, 2011, the Appellants filed a notice of appeal of the Valuation Order. (BAP Case No. 11-8072) ("*Creekside I*"). The Panel affirmed the bankruptcy court's Valuation Order on June 29, 2012. *See In re Creekside Senior Apartments, LP*, 477 B.R. 40 (B.A.P. 6th Cir. 2012).

The Chapter 11 plan confirmation process in these cases has been protracted. The Appellants filed several motions to extend the exclusivity period for filing a plan or soliciting acceptances of the plan, partially because the parties disagreed about the value of the Bank's interest in the LIHTC Properties. The Appellants also filed a total of four disclosure statements and plans, none of which the bankruptcy court approved or confirmed. The bankruptcy court based its refusal to confirm a plan in part on the Appellants' failure to properly value the LIHTC Properties or propose meaningful repayment of the Bank's debt before expiration of the tax credit recapture period.

The Appellants filed their first proposed joint plan of reorganization and disclosure statement in March 2011, five to six months after the cases were filed. In this plan, the Appellants proposed valuing the Bank's secured claims at the bankruptcy court's valuation hearing and paying the Bank's secured claims on a monthly basis. The payments were to be amortized over a thirty-year period with a balloon payment due on the seventh anniversary of the plan's effective date.

The Appellants proposed classifying the Bank's unsecured deficiency claims separately from the general unsecured claims even though the proposed treatment for both classes was identical. The Appellants proposed paying both classes quarterly payments amortized over thirty years with a balloon payment on the fifteenth anniversary of the plan. In addition, both classes could select the alternative unsecured claim treatment in lieu of quarterly payments. The alternative treatment consisted of a lump sum payment on the plan's effective date which was equal to an unspecified percentage of each creditor's allowed claim.

In August 2011, the Appellants filed an amended joint plan of reorganization and an amended disclosure statement. The amended plan provided for essentially the same treatment of the Bank's secured and unsecured claims as the first proposed plan. The only noticeable alterations were that the first amended plan specified that (1) the lump sum payment available to unsecured creditors under the alternative plan treatment would equal 35% of the allowed unsecured claim and (2) the unsecured creditors would be paid simple interest fixed at the rate applicable to federal judgments. *See* 28 U.S.C. § 1961.

Despite the issuance of the Valuation Order on September 12, 2011, the Appellants failed to amend their plan or disclosure statement to reflect the values set by the bankruptcy court until ordered to do so in February 2012. Responding to that order, the Appellants filed a second amended plan and a second amended disclosure statement in March 2012. Pursuant to the terms of this plan, the Appellants proposed remitting monthly payments to the Bank in an amount necessary to amortize the balance of the Bank's claims over thirty years plus simple interest at the non-default rate. These payments would begin after the tax credit recapture period expired and would continue until the tenth anniversary of the plan's effective date. On the tenth anniversary, the Appellants proposed remitting a lump sum payment of the then outstanding principal and interest to the Bank for all five LIHTC Properties. Prior to expiration of the tax credit recapture period, the Appellants proposed compensating the Bank, on a monthly basis, in an amount equal to (1) a portion of the remaining tax credits for Pennyrile and Park Row; and (2) the entire value of the remaining tax credits for Creekside, Franklin Place, and Nicholasville Greens. According to the plan's terms, the value of the tax credits for the latter three properties was equal to the value of the tax credits as set forth in the bankruptcy court's Valuation Order.

As for the Bank's unsecured claims, the Appellants again proposed classifying the Bank's unsecured claims separately from the other general unsecured creditors although the treatment of both classes was identical. The Appellants proposed making quarterly payments to the Bank equal to an amount necessary to amortize the unsecured claims over a period of thirty years.

The values of the LIHTC Properties set forth in the Appellants' second amended disclosure statement did not reflect the values of the Properties set forth in the Valuation Order.

| Property | Valuation Order Value | Second Amended Disclosure Statement Secured Claim | Bank's Proof of Claim |
|---|---|---|---|
| Creekside | $1,058,718.67 | $993,090.67 | $1,272,589.35 |
| Nicholasville Greens | $467,475.86 | $437,478.86 | $714,857.43 |
| Franklin Place | $816,244.42 | $732,805.42 | $863,467.53 |

| | | | |
|---|---|---|---|
| Pennyrile | $1,201,188.44 | $500,498.14 | $466,294.67 |
| Park Row | $1,592,427.01 | $1,092,937.59 | $1,037,461.15 |

The amounts that the Appellants proposed to pay the Bank for the Bank's undersecured claims on the Creekside, Nicholasville, and Franklin Place LIHTC Properties revealed a combined drop in value of the secured claims of over $170,000. On the Pennyrile and Park Row LIHTC Properties, the Appellants only proposed to increase the Bank's oversecured claims by approximately $90,000 combined.

In April 2012, the Appellants filed their third amended plan and third amended disclosure statement. With respect to the payments due on the Bank's allowed secured claims under the plan, the third amended plan provided for essentially the same treatment as the second amended plan. The only differences were the amortization periods.

As for the unsecured claims, the Appellants proposed making payments on the Bank's claims for Creekside, Franklin Place, Pennyrile, and Park Row for the full principal amount of the allowed unsecured claims plus interest at the rate applicable to federal judgments. These quarterly payments would be calculated by amortizing the principal over a period of twenty years. With respect to the claim for Nicholasville Greens, the Appellants proposed amortizing the principal over a period of fifteen years. The payments on the unsecured claims would not begin until after the tax credit recapture period expired. The payments would continue until the tenth anniversary of the plan's effective date at which time the Appellants would make a balloon payment. As before, all of the unsecured creditors could elect the alternative treatment.

Throughout the pendency of these cases, the Appellants altered the source of funding for the Chapter 11 plan. As set forth in the second and third amended plans, the Appellants proposed making payments for the U.S. Trustee fees, Class 2 Priority Claims, and the Class 3 and 4 unsecured claims from (1) their Net Operating Income, (2) the Capital Contribution, (3) the Additional Plan Funding, (4) the Cash Flow Shortfall Escrow, (5) the Net Refinancing Proceeds, (6) the Net Disposition Proceeds, or (7) the Net Transaction Proceeds. The Appellants proposed paying the

Bank's secured claims from (1) their Net Operating Income, (2) the Additional Plan Funding ("as necessary and applicable"), or (3) the Cash Flow Shortfall Escrow ("as necessary and applicable"). All of the funding sources were defined in the Plan.

Alliant Capital, Ltd., an affiliated entity of the Appellants, was designated as the funding source for the Additional Plan Funding and the Cash Flow Shortfall Escrow. Although the Appellants attached a commitment letter from Alliant Capital to the third amended disclosure statement, the Appellants did not disclose what, if anything, Alliant Capital was receiving in exchange for agreeing to provide a significant amount of funding for the Debtors' proposed plan.

In January 2012, the Bank moved to dismiss or convert the Debtors' cases and moved for relief from the automatic stay. The Bank asserted that the Debtors' cases should be dismissed or converted

> based on (i) the continuing loss to or diminution of the estate, coupled with the absence of a reasonable likelihood of rehabilitation; (ii) the Debtors['] inability to effectuate a plan; and (iii) the filings are considered to be in bad faith under the factors courts look to under § 1112.

(Mot. to Dismiss/Convert at 1, ECF No. 308.) The Appellants filed objections to the Bank's motions on February 10, 2012.

The bankruptcy court conducted a hearing on the Bank's motions to dismiss and for relief from the stay on April 18, 2012. The Appellants submitted testimony by affidavit from, among others, Brian Doran, and Brad Weinburg. According to these affidavits, Doran is the President of Alliant Real Estate Investment, LLC ("AREI"), and the Vice-President of Alliant Capital. AREI is the sole member of five limited liability companies, each of which is a General Partner for one Debtor. Weinburg completed the appraisals for the Appellants.

According to testimony presented by the Appellants at the hearing, "approximately $1,000,000 of [Low-Income Housing] Tax Credits are being used annually among the five Debtors . . . [and] the Tax Credits for the years 2010 and 2011 have been claimed." (Mem. Op. & Order at 5, ECF No. 390.) When asked about the balloon payments under the plan, Doran testified that the

Debtors would be able to make those payments; however, Doran could not "provide even a ballpark figure of the anticipated amount of" those payments. (*Id.* at 25.) When asked by Bank's counsel if the Debtors can meet the current operating expenses and plan payments under the plan from net operating income, Doran testified no. (April 18, 2012 Tr. of Hr'g at 34-35, ECF No. 401.)

According to the cash flow projections filed by the Debtors, the Debtors have a negative cash flow that will continue until at least 2020. Given this fact, the bankruptcy court stated that "[t]his deficit makes the assistance of the General Partners and Alliant Capital critical to the Debtors' success." (*Id.*) When asked by the bankruptcy court:

> Does the plan provide that in the event that the [LIHTC Properties] can't be sold for the full amount of the remaining debt or is unable to be refinanced [at the time the balloon payments are due] does the plan provide that Alliant Capital will make up the difference or step in?

(*Id.* at 102.) Doran responded, "That's not written in the plan right now." Pursuant to the Debtors' proposed plan, Alliant Capital has only committed to fund the amounts set forth in the cash flow shortfall projections. Until the projections were revised, the projections did not include any estimate of the amounts necessary to fund the balloon payments.

Weinburg was also called as a witness at the hearing. According to his affidavit, the Appellants asked him to review the third amended plan "to evaluate the assumptions and methodology used to create the cash flow projections in support of the plan and to determine if those assumptions and methodology result in the ability of the Debtors to meet their financial obligations in year ten (10) . . . ." (Weinburg Affidavit at 2, ECF No. 348.) To complete his analysis, Weinburg reviewed the third amended plan, the third amended disclosure statement, the cash flow projections and the Valuation Order. After examining these documents, Weinburg concluded that the Debtors' third amended "plan establishes a reasonable and feasible basis for repayment of all claims in Classes 1, 3, and 4 of the Plan." (*Id.* at 5, 7.)

The bankruptcy court entered a memorandum opinion and order granting the Bank's motion to dismiss on May 30, 2012 ("Dismissal Order"). In determining that dismissal of the Debtors' cases was warranted, the bankruptcy court concluded that the Bank had established "cause" under

11 U.S.C. § 1112(b)(4)(A), (E), and (J), and that "the Debtors' goal in filing and pursuing the 'reorganization' cases was to protect the Debtors' investors and . . . their actions in pursuing this goal were taken to the detriment of their creditors to whom they owed a fiduciary obligation." (Dismissal Order at 34-35, ECF No. 390.) The bankruptcy court based its conclusion in part on the following facts: (1) the Appellants' original plan and disclosure statement did not include values for the LIHTC Properties; (2) the Appellants failed to continue making adequate protection payments after filing the original plan, which the Appellants knew did not have a reasonable possibility of being confirmed within a reasonable time; (3) the Appellants delayed filing the motion for the Valuation Hearing; (4) the Appellants failed to timely amend their plan and disclosure statement after the Valuation Order was issued and then only amended the plan and disclosure statement when ordered to do so by the bankruptcy court; (5) the Appellants failed to include the Valuation Order values in their Second and Third Amended Plans and Disclosure Statements; (6) the Appellants failed to submit plans that provided for any meaningful payment to the Bank or unsecured creditors until after the Tax Credit Recapture period expired; (7) the Appellants admitted their overriding concern was to maximize value for their investors; (8) Alliant Capital's commitment to fund the Appellants' plan was "illusory;" and (9) there was a "substantial and continuing diminution of the estate as evidenced by the Joint Stipulations [of Fact] and in the testimony of Mr. Doran at the Evidentiary Hearing." (*Id.* at 35-36.) The bankruptcy court also found that the Appellants' classification of the Bank's unsecured deficiency balances in a separate class was evidence of bad faith and that the classification had the effect of making the Appellants' plan incapable of being confirmed.

Because the Appellants failed to establish that unusual circumstances existed or that there was a reasonable likelihood that a plan would be confirmed within a reasonable time, the bankruptcy court concluded that the Appellants had not met their burden under 11 U.S.C. § 1112(b)(2)(A).

> As indicated above, the current plan and disclosure statement were not proposed in good faith and the Plan Proponents' actions in the eighteen months these cases have been pending show that at this point, the Chapter 11 is a place to park the Debtors while the Tax Credits are utilized and the recapture period expires.

(Dismissal Order at 42, ECF No. 390.) The bankruptcy court concluded that dismissal of the Debtors' cases was in the best interest of creditors and the estate and was warranted under 11 U.S.C. § 1112(b).

On June 11, 2012, the Appellants filed a timely notice of appeal.

## IV. DISCUSSION

The "for cause" dismissal of a Chapter 11 bankruptcy case is prescribed in 11 U.S.C. § 1112(b)(1) which provides, in pertinent part:

> on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, *for cause* . . . .

11 U.S.C. § 1112(b)(1) (emphasis added). Section 1112(b)(4) contains a nonexhaustive list of examples of "cause" justifying dismissal of a Chapter 11 case. These examples include "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation[.]" 11 U.S.C. § 1112(b)(4)(A).

In determining whether cause exists to dismiss a case under § 1112(b), a court must engage in a "case-specific" factual inquiry which "focus[es] on the circumstances of each debtor." *United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.* (*In re Timbers of Inwood Forest Assocs., Ltd.*), 808 F.2d 363, 371-72 (5th Cir. 1987) (en banc), *aff'd*, 484 U.S. 365, 108 S. Ct. 626 (1988); *In re Great Am. Pyramid Joint Venture*, 144 B.R. 780, 791 (Bankr. W.D. Tenn. 1992). The party seeking dismissal carries the burden of proof and must satisfy that burden by a preponderance of the evidence. *See Loop Corp. v. U.S. Tr.* (*In re Loop Corp.*), 379 F.3d 511, 517-18 (8th Cir. 2004) (citing *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994)). A "bankruptcy court has broad discretion to dismiss a Chapter 11 case under 11 U.S.C. § 1112(b)." *AMC Mortg. Co. v. Tenn. Dep't of Revenue* (*In re AMC Mortg. Co.*), 213 F.3d 917, 920 (6th Cir. 2000). "Accordingly, the decision to dismiss the case will be upheld unless it was an abuse of discretion, defined as 'a definite and clear conviction that the trial court committed a clear error of judgment.'" *Id.* (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)).

In dismissing these cases, the bankruptcy court concluded that there were multiple grounds justifying dismissal. In addition to determining that cause existed pursuant to 11 U.S.C. § 1112(b)(4)(A), the bankruptcy court also concluded that (1) the Debtors lacked good faith; (2) the

Debtors failed to comply with court orders; and (3) the Debtors were unable to timely file and effectuate a plan. " '[O]ne ground for cause is sufficient standing alone' " to justify the "for cause" dismissal of a Chapter 11 case. *Reagan v. Wetzel* (*In re Reagan*), 403 B.R. 614, 621 (B.A.P. 8th Cir. 2009) (quoting *Loop Corp.*, 290 B.R. at 112). Because we conclude that the bankruptcy court did not abuse its discretion in finding cause for dismissal pursuant to § 1112(b)(4)(A), we need not address the bankruptcy court's conclusions with regard to the other grounds for dismissal.

### A.      11 U.S.C. § 1112(b)(4)(A)

In order to demonstrate that cause exists to dismiss a case pursuant to § 1112(b)(4)(A), "the moving party must demonstrate that there is both a (1) [substantial or] continuing loss to or diminution of estate assets and (2) an absence of a reasonable likelihood of rehabilitation." *In re Westgate Props., Ltd.*, 432 B.R. 720, 723 (Bankr. N.D. Ohio 2010). To satisfy the first prong, a movant may demonstrate "that the debtor continues to incur losses or maintains a negative cash-flow position after the entry of the order for relief" or that the debtor's assets have declined in value since the case was commenced. *Id.* (citation omitted); *3685 San Fernando Lender, LLC v. Cross Equities, LLC* (*In re USA Commercial Mortg., Co.*), 452 F. App'x 715, 724 (9th Cir. 2011); *In re Wahlie*, 417 B.R. 8, 11 (Bankr. N.D. Ohio 2009); *see also* 7 *Collier on Bankruptcy* ¶ 1112.04[6][a] (16th ed. 2012). The loss may be substantial or continuing. It need not be both in order to constitute cause under § 1112(b)(4)(A). 7 *Collier on Bankruptcy*, ¶ 1112.04[6][a][i] (16th ed. 2012) ("By the use of the word 'substantial' in section 1112(b)(4)(A), Congress has indicated that a loss need not be continuing in order to satisfy the first prong of this enumerated cause.").

To satisfy the second prong of § 1112(b)(4)(A), a movant must demonstrate that the debtor does not have a reasonable likelihood of rehabilitation. As used in § 1112(b)(4)(A), "rehabilitation does not necessarily denote reorganization, which could involve liquidation. Instead, rehabilitation signifies something more, with it being described as 'to put back in good condition; re-establish on a firm, sound basis.' " *Westgate Props.*, 432 B.R. at 723 (quoting *In re V Cos.*, 274 B.R. 721, 725 (Bankr. N.D. Ohio 2002)). " 'Rehabilitation' is a different and . . . much more demanding standard than 'reorganization.' " *In re Brutsche*, 476 B.R. 298, 301 (Bankr. D.N.M. 2012). If " 'the debtor, or some other party, will be able to stem the debtor's losses and place the debtor's enterprise back

on a solid financial footing within a reasonable amount of time,' " then the debtor may have a reasonable likelihood of rehabilitation. *In re Costa Bonita Beach Resort, Inc.*, 479 B.R. 14, 42 (Bankr. D.P.R. 2012) (quoting 7 *Collier on Bankruptcy* ¶ 1112.04[6][a] (16th ed. 2012)). "The purpose of § 1112(b)(1) is to 'preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation.' " *Loop Corp.*, 379 F.3d at 516 (quoting *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995)).

The Bankruptcy Code does not allow a debtor an unlimited amount of time to confirm a plan or an unlimited number of attempts at plan confirmation, particularly in single asset real estate cases. *See* 11 U.S.C. § 362(d)(3). A debtor in a single asset real estate case that stops making adequate protection payments does so at its own peril and runs the risk that a bankruptcy court will determine that the debtor's plan of reorganization lacks "a reasonable possibility of being confirmed within a reasonable time." *Id.* The Supreme Court's decision in *Timbers of Inwood Forest Associates, Ltd.* is instructive. *See United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.* (*In re Timbers of Inwood Forest Assocs., Ltd.*), 484 U.S. 365, 108 S. Ct. 626 (1988). Inherent in the concept of a reasonable likelihood of rehabilitation for a single asset real estate debtor is " that '[t]here must be a reasonable possibility of a successful reorganization within a reasonable time.' " *First Jersey Nat'l Bank v. Brown* (*In re Brown*), 951 F.2d 564, 572 (3d Cir. 1991) (quoting *Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. at 376, 108 S. Ct. at 632) (analyzing "a reasonable possibility of a successful reorganization within a reasonable time" as a factor in "cause" under 11 U.S.C. § 1112(b)). *Cf. In re 51-53 W. 129th St. HDFC, Inc.*, 475 B.R. 391, 399 (Bankr. S.D.N.Y. 2012) ("While section 1112(b)(4)(A) explicitly states that cause exists for conversion or dismissal when there is a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, this same standard evidences cause in the context of stay relief under section 362(d)(1)." (citations and internal quotations omitted)). If a creditor moves for and is entitled to relief from the automatic stay, rehabilitation is much less likely.

In the cases currently on appeal, the Appellants' financial projections indicated that the Debtors would have negative cash flow of approximately $22,000 per month during the last half of 2012. The projections also demonstrated that negative cash flow would continue through 2020. In

addition, the Appellants admitted that they were claiming slightly over $1,000,000 in tax credits per year against the LIHTC Properties. Appellants admit, and their most recent Chapter 11 plan demonstrates, that the values of the LIHTC Properties decline each time the tax credits are claimed by the Debtors' investors. So, not only did the Debtors have an annual negative cash flow, the values of the LIHTC Properties were also declining.

These cases were filed in September and October 2010. Shortly thereafter, in November 2010, the Appellants indicated that determining the value of the Bank's interest in the LIHTC Properties would be vital to the joint Chapter 11 plan. Despite this assertion, the Appellants did not file a proposed amended plan until six months after issuance of the bankruptcy court's Valuation Order and only after being ordered to do so by the bankruptcy court. Then, in setting forth the Bank's secured claims in that plan, the Appellants alleged that the values of the three undersecured LIHTC Properties had decreased significantly due to tax credits being claimed through June 2012. The bankruptcy court did not abuse its discretion in determining that there was a continuing loss to or diminution of estate assets in these cases.

As for the second prong of the § 1112(b)(4)(A) analysis, the bankruptcy court determined that the Debtors did not have a reasonable likelihood of rehabilitation. The bankruptcy court based this conclusion on the Appellants' failure to provide for any meaningful repayment of the Bank's claims, both secured and unsecured, until after expiration of the tax credit recapture period. In addition, the Appellants did not propose refinancing or selling the LIHTC Properties until after the tax credit recapture period expires. The Debtors' financial projections demonstrated that they will continue to suffer significant cash flow shortfalls throughout the coming years and will only be able to make their proposed payments with the assistance of Alliant Capital. The Appellants failed to disclose what Alliant Capital would receive in exchange for this agreement to backstop the cash flow shortfalls.

Since these cases were filed in late 2010, the Debtors remitted a mere $15,000 to the Bank in adequate protection payments. The last of these payments was made in February 2011, and nothing has been paid to the Bank since that time. A debtor who is unable to service its debt at the

outset of the case and remains unable to do so for the foreseeable future does not have a reasonable likelihood of rehabilitation. *In re Fall*, 405 B.R. 863, 869 (Bankr. N.D. Ohio 2009).

In their opening brief, the Appellants assert that they provided for meaningful repayment of the Bank's secured claims by proposing to pay the Bank the values of the tax credits annually. However, according to the Appellants' figures, the combined values of the Bank's claims secured by the Creekside, Nicholasville, and Franklin Place LIHTC Properties decreased by over $170,000 during the pendency of these cases. Despite this decrease, the third amended plan proposed to value the Bank's tax credits as of the plan's effective date. As a result, the plan proposed to undercompensate the Bank for the tax credits that had already been used while these cases were pending without a confirmed plan. Additionally, although the Appellants increased the value of the Bank's secured claims on the Pennyrile and Park Row LIHTC Properties, it is unclear whether the Appellants properly provided for the full amounts of the Bank's allowed secured claims pursuant to 11 U.S.C. § 506(b). In the Bank's motion for relief from stay, the Bank requested, and presumably would be entitled to, substantial attorney's fees and postpetition interest in connection with the Bank's claims regarding the two oversecured claims. Based on all of these supporting facts, the bankruptcy court did not abuse its discretion in determining that the Debtors did not have a reasonable likelihood of rehabilitation.

As the Supreme Court noted in the context of another single asset real estate case, "this is an easy case." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2073 (2012). Whether the Appellants' delays in moving their cases toward a confirmable plan constituted bad faith is irrelevant. Either way, given the ample evidence in the record of the continuing loss and diminution of the estates' assets and the lack of a reasonable likelihood of rehabilitation, the bankruptcy court did not abuse its discretion in finding cause for dismissal under 11 U.S.C. § 1112(b)(4)(A).

B.      *"Unusual Circumstances"*

Once a party demonstrates that cause exists to convert or dismiss the case under § 1112(b), a court is required to dismiss or convert the case unless the court "finds and specifically identifies

unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate. . . ." 11 U.S.C. § 1112(b)(2). By its own terms, § 1112(b)(2) provides that the "unusual circumstances" exception does not apply if the cause for dismissal or conversion is a "substantial or continuing loss to or diminution of the estate," as set forth in § 1112(b)(4)(A). *See also In re Landmark Atl. Hess Farm*, 448 B.R. 707, 717 (Bankr. D. Md. 2011). In this appeal, the Panel determined that the bankruptcy court did not abuse its discretion in finding cause for dismissal under § 1112(b)(4)(A). As a result, the "unusual circumstances" exception does not apply.

## V. CONCLUSION

For the foregoing reasons, we affirm the bankruptcy court's dismissal of the Debtors' jointly administered Chapter 11 cases pursuant to 11 U.S.C. § 1112(b)(4)(A).