*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to
6th Cir. BAP LBR 8024-1(b). See also 6th Cir. BAP LBR 8014-1(c).*

File Name: 19b0001n.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE: U.S. TOMMY, INC.,

*Debtor.*

No. 18-8020

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio at Cleveland.
No. 17-16150—Jessica E. Price Smith, Judge

Argued: February 12, 2019

Decided and Filed: March 22, 2019

Before: DALES, OPPERMAN and WISE, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ARGUED:** Richard Nemeth, NEMETH & ASSOCIATES, LLC, Cleveland, Ohio, Leonard J. Pappas, Cleveland, Ohio, for Appellant. Heather E. Heberlein, BUCKLEY KING LPA, Cleveland, Ohio, for Appellee. **ON BRIEF:** Richard Nemeth, NEMETH & ASSOCIATES, LLC, Cleveland, Ohio, for Appellant. Heather E. Heberlein, BUCKLEY KING LPA, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

TRACEY N. WISE, Bankruptcy Appellate Panel Judge. Debtor/Appellant U.S. Tommy, Inc. ("Debtor") appeals the bankruptcy court's pre-confirmation dismissal of its chapter 11 case pursuant to § 1112(b)[1] about seven months after it was filed. The bankruptcy court granted a

---

[1]Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

creditor's written motion to dismiss, but that motion did not raise the arguments that the bankruptcy court ultimately found to be cause for dismissal. As a result, Debtor contends that the bankruptcy court erred in dismissing its case based on grounds not contained in the creditor's motion and argues that the court should have conducted an evidentiary hearing before dismissing the case. For the reasons stated, we affirm.

## ISSUES ON APPEAL

Debtor raises two issues on appeal:

1. Whether the bankruptcy court abused its discretion in granting a creditor's motion to dismiss when none of the grounds set forth in the motion had merit at the time of dismissal?

2. Whether the bankruptcy court erred in granting the motion to dismiss without giving the parties an opportunity to present evidence?

## JURISDICTION

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this timely appeal from the June 5, 2018 order of the United States Bankruptcy Court for the Northern District of Ohio dismissing Debtor's bankruptcy case. The United States District Court for the Northern District of Ohio has authorized appeals to the Panel, and no party elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). Under 28 U.S.C. § 158(a)(1), this Panel has jurisdiction to hear appeals "from final judgments, orders, and decrees" issued by the bankruptcy court. The order dismissing Debtor's chapter 11 proceeding is a final and appealable order. *AMC Mortg. Co., Inc. v. Tenn. Dep't of Revenue* (*In re AMC Mortg. Co., Inc.*), 213 F.3d 917, 920 (6th Cir. 2000).

## FACTS

Debtor owns the University Hotel and Suites in Cleveland, Ohio. The improved real estate is Debtor's principal asset. In 2011, Debtor's first-position secured lender on the hotel, Grand Pacific Holdings Corp. ("GP"),[2] filed a foreclosure proceeding in Ohio state court.

---

[2]GP, Indenture Trustee for the Grand Pacific Business Loan Trust 2005-1, had been Debtor's primary secured creditor with a mortgage on Debtor's sole real estate asset and on certain of its personal property assets by virtue of security agreements and UCC filings. GP was the originally-named Appellee in this appeal. After Debtor

Thereafter, the parties reached a settlement by which GP agreed to dismiss the foreclosure proceeding during a forbearance period, and Debtor agreed that upon its default or the expiration of that period GP could reinstate the proceeding and seek entry of a stipulated judgment in GP's favor granting GP the right to foreclose its lien. In March 2017, after Debtor's default, GP moved the state court to reinstate the foreclosure case and ultimately obtained a judgment against Debtor (and its owners) for more than $4,000,000. The state court appointed a receiver and a sheriff's sale of the hotel was scheduled.

On October 16, 2017, Debtor filed its chapter 11 case to stop the sheriff's sale and to permit Debtor to continue operating the hotel instead of the receiver. At the first hearing in the case on October 19, Debtor's counsel stated that its plan in filing bankruptcy was to take advantage of the automatic stay to locate alternative financing or find another use for its property. But, as the case progressed, Debtor's plan changed; Debtor chose to focus on locating a third party to purchase GP's claim. In fact, Debtor's counsel advised the bankruptcy court several times that, if GP's claim could be purchased, Debtor might dismiss its bankruptcy case and return to state court.

During the bankruptcy case, the court authorized Debtor's interim use of GP's cash collateral (over GP's initial objection) via a series of cash collateral orders of limited duration, each entered after a hearing (collectively, the "Cash Collateral Orders"). At most of these hearings, the court asked how Debtor intended to move its bankruptcy case forward and questioned whether the case amounted to a two-party dispute that should proceed in state court.

On November 22, 2017, GP filed a Motion to Dismiss Debtor's case for cause pursuant to § 1112(b) due primarily to Debtor's failure to comply with the reporting terms of the first two Cash Collateral Orders (the "Motion to Dismiss"). The bankruptcy court held six hearings on the Motion to Dismiss—on December 5, 2017 and January 9, January 23, February 20, May 1, and May 22, 2018—in conjunction with continued hearings on Debtor's interim use of cash collateral. Three hearings occurred after the January 23 hearing at which the parties confirmed that Debtor had met its reporting obligations under the first two Cash Collateral Orders.

filed the appeal, however, GP's claim was sold to Crimson Cleveland Hotel Investors, LLLP. The Panel granted Crimson's motion to become the substitute Appellee.

Starting on January 9, 2018, Debtor represented to the bankruptcy court that it was in contact with third parties interested in acquiring the hotel or GP's interest in the hotel. [ECF No. 102,[3] Jan. 9, 2018 H'g Tr. at 5 (stating that Debtor had executed a non-binding letter of intent with a foreign company and explaining "[w]e haven't really come to a conclusion about what the structure of the deal would be. My guess is that this entity probably would buy out [GP's] interest, and then the bankruptcy case may even be dismissed, and the matter sent back to state court. Of course, we'd have to come to an agreement with [GP] in order for that to fall in place.").] At hearings on January 23 and February 20, Debtor also discussed the possibility of a third party acquiring GP's interest. However, Debtor did not communicate to GP any offer from a third party until immediately before the penultimate hearing on May 1.

Debtor filed a perfunctory disclosure statement and plan of reorganization on March 30, 2018, about six weeks after the exclusivity period expired. The disclosure statement was incomplete as the referenced exhibits were not attached (including the statement identifying Debtor's material assets, its liquidation analysis, and its financial projections). Debtor never requested a hearing on the approval of its disclosure statement.

After Debtor filed its reorganization plan and disclosure statement, the bankruptcy court held a hearing on May 1, 2018. The parties had notice that, at that hearing, the court again would be considering Debtor's continued interim use of cash collateral and GP's Motion to Dismiss. GP stated at the hearing that it no longer would consent to Debtor's use of its cash collateral. GP asked that Debtor's chapter 11 case be dismissed because its proposed plan was an unconfirmable "place-saver plan," the disclosure statement Debtor had filed was inadequate, the offer Debtor presented to GP before the hearing for the purchase of its claim was insufficient, and what amounted to a two-party dispute between Debtor and GP could be handled in state court. In response, Debtor advised that it had obtained a letter of intent from a prospective investor which offered to purchase GP's secured interest for a lump sum, but that GP refused to provide a price at which it was willing to sell its claim. Debtor advised that it had hired an appraiser to determine the value of Debtor's hotel business, which offered four values:

---

[3]Unless otherwise indicated, all citations to the record are to CM/ECF docket entries maintained by the bankruptcy court in Case No. 17-16150.

liquidation value ($1,960,000); sales comparison approach value ($2,335,000); reconciled value ($2,445,000); and income approach value ($2,560,000).  The third party offered liquidation value to GP (although Debtor intended to continue to operate the hotel), which GP's counsel indicated at the hearing would be rejected out-of-hand.

At the conclusion of that hearing, the bankruptcy court again extended Debtor's use of cash collateral and gave Debtor 21 days, until May 22, 2018, for the potential purchaser and GP to reach an agreement, at which time there would be another hearing on cash collateral and on the Motion to Dismiss.  The court stated: "that should be sufficient time for that offer to have come in and be able to be reviewed.  If that is not done, then we are done."  [ECF Dkt. No. 104, May 1, 2018 H'g Tr. at 9.]  At oral argument, Debtor's counsel conceded that Debtor understood at the time that the bankruptcy court would dismiss the case unless GP reached a deal to sell its claim before the May 22 hearing.

Although the third party increased its offer to purchase GP's interest after the May 1, 2018 hearing, GP and the third party did not reach an agreement.  At the final hearing on May 22,  Debtor contended that the case should continue because it was in full compliance with all of the conditions of the Cash Collateral Orders; it had timely made all adequate protection payments; it had timely filed all monthly operating reports; the prospective investor was willing to continue to negotiate with GP to reach an agreement to purchase its interest; and the prospective investor wanted Debtor to remain in chapter 11 so that it would have the option of addressing the claims of the other creditors in a reorganization plan.  Debtor also argued that the dismissal of its case would harm all creditors.  On that score, Debtor contended that GP was receiving adequate protection payments in an amount that significantly exceeded the minimum amount that the bankruptcy court could have authorized, a state court liquidation sale likely would realize less value for the hotel business than the prospective investor was currently offering, and all other creditors would receive no value at all in a liquation sale.  Debtor thus asked the bankruptcy court to again extend its use of cash collateral and give the third party and GP additional time to negotiate.

The bankruptcy court did not grant additional time and, instead, advised that it would dismiss the case.  On June 5, 2018, the bankruptcy court entered its Order Dismissing Debtor's Chapter 11 Case "[f]or the reasons stated in open court on May 22, 2018" [ECF No. 60] (the "Dismissal Order").  The reasons given at the May 22 hearing were as follows:

> So this is where we are and what my concern is.  This was filed when a Receiver was being appointed in a state court action.  We are here now and what has been discussed was that this Debtor had different respective business opportunities for this property and ways that it can continue as a going concern.  It has always been an issue regarding the use of cash collateral, whether [GP] was going to continue authorizing the use or proceed with the objection or the motion to dismiss.  And, you know, the point of this process is to allow the Debtor the leeway in order to be able to attempt to reorganize itself as necessary.  It is not the obligation of the lender, secured creditor, at this point the person with the interest in cash collateral, to accept an offer to buy out their claim in order for this case to go forward.  It's not as though this was a plan that was proposed that authorized payment to the lender that wasn't going forward.  At this point we're kind of holding here in the Chapter 11 context, now over the objection of the lender, while the Debtor tries to find someone else not to be the lender for purposes of this proceeding, but rather to buy out the current lender in this proceeding.  And although I understand the value and the attractiveness of being in the context of a Chapter 11 in order to deal with other claims, what is being said here is that the potential person who is attempting to buy the loan obligation, which has not been accepted, would prefer to be here.  That person isn't even a party here.  They aren't even participating in this process.  And so I don't find it appropriate to maintain this Chapter 11 process because a potential purchaser of a lien interest would prefer to be here. . . .
>
> I cannot, at this moment, see how the Chapter 11 process is moving forward based upon where we currently are, in particular without any movement in the position of [GP] and then their objection to the continued use of cash collateral, as well as their affirmative motion to dismiss this case.  So if there is nothing further from either party, the motion to dismiss is granted.  At this point this matter is not proceeding to a resolution and we are and have been in a holding pattern basically since December 5th of 2017.  We are now a little more than six months into this case and there is no alternative use for the property.  There is no alternative lender who would be willing to continue providing funding.  This lender has indicated that they have no interest in continuing funding and so this case is dismissed."

[ECF No. 100, May 22, 2018 H'g Tr. at 6-9.]  This appeal followed.

**DISCUSSION**

**I.      Standard of review.**

This Panel reviews the dismissal of a bankruptcy case "for cause" for an abuse of discretion.  *In re Creekside Senior Apts., L.P.*, 489 B.R. 51, 54 (B.A.P. 6th Cir. 2013) (citing *Mitan v. Duval* (*In re Mitan*), 573 F.3d 237, 241 (6th Cir. 2009)).  "'An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard.'"  *Id*. (quoting *Kaye v. Agripool, SRL* (*In re Murray, Inc.*), 392 B.R. 288, 296 (B.A.P. 6th Cir. 2008)) (alteration in original).

**II.     The bankruptcy court had authority to dismiss Debtor's chapter 11 bankruptcy case on grounds not contained in GP's written motion to dismiss and did not abuse its discretion.**

**A.      A chapter 11 case may be dismissed for cause.**

The Bankruptcy Code provides that, subject to exceptions inapplicable here, "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause ...."  11 U.S.C. § 1112(b)(1).  Section 1112(b)(4) sets forth a non-exhaustive list of 16 examples of "cause."  *Creekside*, 489 B.R. at 60; *see also* 11 U.S.C. § 102(3) (stating that the words "includes" or "including" are not limiting).  Rather, a "bankruptcy court has broad discretion to dismiss a Chapter 11 case under 11 U.S.C. § 1112(b)." *AMC Mortg.*, 213 F.3d at 920 (citations omitted).  A bankruptcy court considering dismissal under § 1112(b) "must engage in a case-specific factual inquiry which focuses on the circumstances of the debtor."  *In re Johnson*, Case No. 315-03939, 2016 Bankr. LEXIS 1937, at *14 (Bankr. M.D. Tenn. May 5, 2016).

**B.      Debtor had adequate notice of the arguments raised to support dismissal that were not contained in GP's written Motion to Dismiss.**

"The Bankruptcy Code generally requires a court to give affected parties notice and an opportunity to be heard before converting or dismissing a Chapter 11 petition."  *Mitan v. Duval* (*In re Mitan*), 178 Fed. Appx. 503, 506 (6th Cir. 2006).  "The Code further provides that 'after

notice and a hearing' means 'after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances.' [11 U.S.C.] § 102(1)(A)." *Id*. at 507. The record reflects that Debtor received sufficient notice under the circumstances that the bankruptcy court could dismiss its case for cause on May 22, 2018.

Debtor is correct that GP's Motion to Dismiss, filed about one month into the case, did not assert arguments akin to those underpinning the bankruptcy court's ultimate decision to dismiss reached six months later. Instead, the court—which held eight hearings in the case between October 19, 2017 and May 22, 2018—dismissed for several other reasons constituting "cause," as evidenced by its statements on the record on May 22. But, in hearings prior to the dismissal, GP and the court raised these reasons for dismissing the case, affording Debtor every opportunity to comment on and respond to them. In other words, Debtor had notice of the bases the bankruptcy court adopted to dismiss the case even though they were not outlined in GP's Motion to Dismiss.

Beginning on December 5, 2017, and continuing through May 1, 2018, each time the court set a hearing to address Debtor's continued interim use of cash collateral, the court advised the parties that the Motion to Dismiss also would be heard.[4] Thus, Debtor knew that the court had not denied GP's Motion to Dismiss and continued to assess whether to dismiss the case for cause.[5]

---

[4]Debtor's reply brief states that § 1112(b)(3) "requires a court to hear a motion to dismiss within 30 days after its [*sic*] filed and decide the motion within 15 days of the hearing." [Case No. 18-8020, ECF No. 35 at 9.] Debtor offers an incomplete recitation of the statute, which provides: "The court shall commence the hearing on a motion under this subsection not later than 30 days after filing of the motion, and shall decide the motion not later than 15 days after commencement of such hearing, unless the movant expressly consents to a continuance for a specific period of time or compelling circumstances prevent the court from meeting the time limits established by this paragraph." 11 U.S.C. § 1112(b)(3). The bankruptcy court repeatedly continued the hearing on the Motion to Dismiss. The record strongly suggests that GP consented to these continuances given that it never objected to a continuance.

In any event, Debtor raised this issue for the first time in its appellate reply brief. Arguments made for the first time in a reply brief are not to be considered. *Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986). Moreover, Debtor did not make this argument in the bankruptcy court. Thus, Debtor forfeited this argument on appeal. *In re Hood*, 319 F.3d 755, 760 (6th Cir. 2003).

[5]Tellingly, at the February 20, 2018 hearing, Debtor's counsel stated that if Debtor failed to file a plan and disclosure statement on or before March 30, 2018, GP "could request a hearing on its motion to dismiss." [ECF No. 99, Feb. 20, 2018 H'g Tr. at 4.] At that same hearing, Debtor's counsel asked that "the motion to dismiss the case be adjourned for two months with the one -- the one provision that [GP] could file a motion for a hearing on its

Further, while GP's written motion raised a limited set of issues, GP's counsel and the bankruptcy court at the multiple continued hearings expressly raised other issues relating to the propriety of continuing forward with the case, including those that ultimately resulted in the dismissal decision.  Most importantly, on May 1, 2018, with Debtor's counsel present, the bankruptcy court heard GP's argument that the case should be dismissed because (1) the offer to purchase its interest (tendered that morning) appeared to be woefully insufficient, (2) Debtor's disclosure statement was inadequate and incomplete and its plan was unconfirmable,[6] (3) GP and Debtor essentially had a two-party dispute that could be resolved outside of bankruptcy, and (4) there had not been enough progress in the case for GP to consent to Debtor's further use of its cash collateral.  Rather than acting on counsel's arguments, the court set another hearing for May 22 and advised that the case would be "done" as of the May 22 hearing absent an agreement between GP and the third party on the sale of GP's interest.  Therefore, even though these arguments were not in GP's original written Motion to Dismiss, its new arguments were offered in open court at a hearing on that Motion to Dismiss, and Debtor had the opportunity to respond to them.  GP raising these dismissal arguments orally was not improper; a written motion under § 1112(b) "is not required as long as a debtor is placed on notice as to 'the nature of the motion and the identity of the movant'."  *In re Cont'l Holdings*, 170 B.R. 919, 928 (Bankr. N.D. Ohio 1994) (addressing motion to convert under § 1112(b), and quoting *A. Illum Hansen, Inc. v. Tiana Queen Motel, Inc. (In re Tiana Queen Motel, Inc.)*, 749 F.2d 146, 149 (2nd Cir. 1984), *cert. denied*, 471 U.S. 1138, 105 S. Ct. 2681 (1985)).

Finally, Debtor contends that it did not receive proper notice of the May 22 hearing on the Motion to Dismiss.  Federal Rule of Bankruptcy Procedure 2002(a)(4) requires that the parties in interest receive 21-day notice by mail of a hearing on the dismissal of a chapter 11 reorganization case.  GP filed the Motion to Dismiss on November 22, 2017.  Debtor filed

---

motion to dismiss before that if the Debtor fails to file the plan and disclosure statement before the end of March." [*Id*. at 6-7.]  At a minimum, these statements (1) confirm that Debtor knew that Creditor's Motion to Dismiss remained pending, and (2) establish that Debtor's counsel perceived that GP could move forward with the Motion to Dismiss on a basis for dismissal not contained in its written motion.

[6] Debtor's proposed plan had five classes, including equity holders at Class 5.  GP was the sole member of Class 2 and held, by far, the most significant voting interest in Class 4 (non-priority unsecured claims) owing to the value of the unsecured portion of its claim.  Thus, GP's assent would be essential to the success of Debtor's plan.

written opposition to the Motion to Dismiss on November 28, 2017. The bankruptcy court held the first hearing on the Motion to Dismiss on December 4, 2017. The hearing on the motion was continued six times through May 22, 2018, at which time dismissal was granted. Therefore, Debtor had more than 21-day notice of the hearing on GP's Motion to Dismiss. With respect to the final hearing alone, the bankruptcy court provided oral notice on May 1, 2018, that another hearing on the Motion to Dismiss would occur on May 22, 21 days later. Debtor received actual notice of the continued hearing, appeared, and its counsel presented argument. Debtor cannot now claim on appeal it was somehow prejudiced.

**C.        The bankruptcy court did not abuse its discretion in dismissing the case.**

On the merits, as stated above, the Panel reviews the Dismissal Order under an abuse of discretion standard. "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Barlow v. M.J. Waterman & Assocs., Inc.* (*In re M.J. Waterman & Assocs., Inc.*), 227 F.3d 604, 608 (6th Cir. 2000).

"The enumerated bases for cause under section 1112(b)(4) each focus on the postpetition circumstances of a debtor and its postpetition progress toward reorganization. . . ." *In re RainTree Healthcare of Forsyth LLC*, Case No. 17-51237, 2018 Bankr. LEXIS 334, at *21 n.18 (Bankr. M.D.N.C. Feb. 7, 2018). The bankruptcy court had a well-developed record on which to base its conclusion that dismissal for cause was appropriate based on Debtor's failure to progress towards a reorganization. In eight hearings over the course of several months, the bankruptcy court asked repeatedly what Debtor's intent was in moving the case through the bankruptcy process, and why the case belonged in bankruptcy court. The transcripts of the court's hearings manifest that Debtor never provided a concrete plan to restructure its business and never effectively disputed that the case could not proceed outside of bankruptcy court.

As early as the third hearing on December 5, 2017, the bankruptcy court stated: "I would like you to know that I am concerned about where this case is going and really how the Debtor sees it proceeding. When we came in, the possibilities of what the Debtor was to become were

varied, and there didn't seem to be kind of a specific direction." [ECF No. 107, Dec. 5, 2017 H'g Tr. at 6-7.]  The court stated that it wanted clarification at the next hearing "in terms of the status of this case and how the Debtor intends to proceed. . . .  Whether that's by sale or changing its business model or what have you." [*Id.* at 7.]  Yet, at the next hearing, Debtor only provided information about a non-binding letter of intent signed the previous day and advised that there was no developed structure for a deal.

At the hearing on January 23, 2018 after receiving another indeterminate update on Debtor's plans predicated not on Debtor's rehabilitation, but solely on a third party buying GP's claim, the court clearly expressed its view that Debtor was not moving forward to restructure its business through the chapter 11 process: "I feel like you're buying time, and I understand that's part of the reason why you're here, but I don't see how this case resolves itself in bankruptcy. . . . [T]his is more of a strategy on how to continue operating outside of the system as opposed to how to manage this business in it. . . .  I'm not seeing the benefit of being here…." [ECF No. 103, Jan. 23, 2018 H'g Tr. at 7-8.]  However, after advising of its concerns, the court continued extending Debtor's interim use of cash collateral to give Debtor a chance to reorganize—and did so two more times.

Debtor never addressed the court's concerns.  So, after several more months had passed and Debtor still had not provided a viable restructuring plan that was not dependent on its primary secured creditor selling its claim, the court detailed why it had decided that dismissal was appropriate.  Based upon the record of the hearings before the bankruptcy court, the Panel finds no abuse of discretion in dismissing this case.

**III.    The bankruptcy court did not err in dismissing the case without taking evidence on the motion to dismiss.**

Debtor also asserts that the bankruptcy court erred by not taking evidence before dismissing its case.  But Debtor's appellate briefs do not explain how it preserved this argument below, do not show that Debtor ever requested an evidentiary hearing on the motion to dismiss, and do not cite legal authority for this argument.  Issues raised in a perfunctory manner are deemed waived. *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) ("It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at

developed argumentation, are deemed waived." (internal quotation marks and citations omitted)). Moreover, if the record is adequate, an evidentiary hearing is not required before dismissing a case. *See*, *e.g.*, *Singer Furniture Acquisition Corp. v. SSMC Inc.* (*In re Singer Furniture Acquisition Corp.*), 254 B.R. 46, 53 (M.D. Fla. 2000) ("The Code requires bankruptcy courts to conduct such 'hearing[s] as [are] appropriate in the particular circumstances.' 11 U.S.C. § 102(1)(A). Courts throughout the country have held that evidentiary hearings are not required before a bankruptcy court dismisses a Chapter 11 petition due to bad faith."); *see also In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991) (affirming dismissal of chapter 7 petition and stating that, "under these circumstances… the formalities of a full-blown evidentiary hearing are not required. [Debtor] was afforded adequate opportunity to tell the court why his petition should not be dismissed. Based on the facts and matters presented to the court, a dismissal was granted within the court's sound discretion. We cannot say that a failure to have an evidentiary hearing, although normally indicated, was prejudicial error under these circumstances.").

Similarly, Debtor contends in its reply brief that the bankruptcy court did not consider whether evidence existed of "unusual circumstances" counseling against dismissal. Again, Debtor may not raise new arguments in a reply brief. And, on the merits, Debtor has the burden of establishing "unusual circumstances" under § 1112(b)(2). *In re Four Wells Ltd.*, Case Nos. 15-8020/8021/8022/8023, 2016 Bankr. LEXIS 1673, at *44 (B.A.P. 6th Cir. April 22, 2016) ("The debtor has the burden to establish that all the factual elements of § 1112(b)(2) exist." (citation omitted)). Debtor has failed to identify anything in the record to show that it attempted to satisfy its burden in the bankruptcy court, or that it otherwise preserved this argument below.

**CONCLUSION**

For the reasons stated, the bankruptcy court's Dismissal Order is AFFIRMED.